## J. L. MOTT IRON WORKS v. CLOW et al.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1897.)

### No. 325.

COPYRIGHT—SUBJECTS OF COPYRIGHT—PRICE CATALOGUES.

A price catalogue, constituting a volume containing illustrations of wares offered for sale, such as washbowls, bath tubs, footbaths, etc., which articles are without ornamentation, and cannot well be the subject of artistic treatment, is not the proper subject of a copyright, the letterpress being confined to a statement of dimensions and price.

On Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This is an appeal by the J. L. Mott Iron Works from a decree sustaining the demurrer to its amended bill of complaint, and dismissing the bill for want of equity. The bill charges, in substance, that the J. L. Mott Iron Works since the year 1873 has continuously been engaged in the manufacture of various articles and appliances of useful or ornamental character, or both, in iron and other base metals, and for many years has maintained an office and show room in the city of New York and in the city of Chicago, and has conducted a large business in the articles described throughout the United States; that, during the period from the year 1888 to and including the year 1893, the complainant became the proprietor of certain illustrated books or circulars, with respect to each of which, and before publication, a printed copy of the title was duly deposited with the librarian of congress, and within ten days after publication two completed printed copies were deposited in the same office, and notice of the copyright given by inserting on the title page of each printed and published copy of the work the usual notice that the books or circulars were entered according to the act of congress. The titles to these different publications were as follows: "1888. Catalogue G. Illustrating the Plumbing and Sanitary Department of the J. L. Mott Iron Works." "1890. Imperial Porcelain Baths." "1890. Imperial, Newport, Yorkshire, and Hygeia Slop Sinks." "1891. Imperial Porcelain Baths." "1892. Lavatories for Use in Steamships, Yachts, Offices, etc., and All Places Where Economy of Space is Required." "1892. Imperial Porcelain Lined Iron Seat and Foot Baths." "1893. Imperial Porcelain Baths." "1893. Mott's Patent Slop Sinks." "1893. Bath-Room Fitting." Copies of their publications are filed as exhibits to the bill. It is alleged that each and every of such books and publications was designed and adapted to be used, and has constantly been used since their several publications, as books of reference by architects, plumbers, builders, and other persons interested in constructing houses, or requiring articles of the nature described, or information concerning styles, designs, dimensions, and other qualities of articles of the kind described, and for purposes of comparison of such designs with those of other manufacturers of similar goods. The bill further charges that the defendants, who are engaged in the manufacture of similar articles, published certain catalogues, entitled: "1894. Illustrated Catalogues of James N. Clow and Son, Manufacturers in and Dealers in Supplies for Plumbers, Steam and Gas Fitters, Water and Gas Works, Railroads and Contractors;" that such catalogue is composed to a large extent of cuts and designs copied from those in the copyrighted catalogues of the complainant, or in some of them, and such cuts or designs, and the plates from which they were printed, were not taken or made from physical copies of articles manufactured by the defendants, or made by artists or engravers originating them, but they were copied directly from the plates, designs, or cuts in the catalogue or circulars of the complainants, taken by photography, or by some other mechanical process not involving the thought or artistic skill prerequisite to make an original design or cut, or to engrave a plate from a physical object or manufactured article. It is charged that the copying of such designs or cuts, and their publication in the catalogue of the defendants, is a piracy of the copyrighted catalogues of the complainant, and an infringe-

ment of its sole and exclusive right to publish its catalogue for the term of years prescribed by law. The bill specifically states the portions of the defendants' catalogue which have been copied directly, specifying nine plates, pictures, or designs from the defendants' catalogue alleged to be copied from plates, pictures, or designs in the complainant's catalogue. The bill prays for an injunction to restrain the further printing, publishing, selling, or disposing of any catalogues containing copies of the complainant's catalogue, or any portion, or either of them, and from printing, publishing, selling, or otherwise disposing of any cuts or designs copied, taken, or colorably altered from the complainant's catalogues, or either of them, during the respective terms of life of the copyrights of the complainant, and that such copying may be declared to be an unlawful piracy of the complainant's catalogue. The demurrer, so far as it is necessary to be stated, proceeds upon the grounds that the matter contained in the several catalogues of the complainant was not the subject-matter of copyright under the copyright laws of the United States, that such publications were simply trade catalogues or circulars, and that neither the cuts, illustrations, nor text could be legally copyrighted, but were common property, and subject to the use of the defendants for the purpose of issuing circulars and advertising the same kind of wares as the wares represented in the several books or catalogues alleged to have been copyrighted.

John H. Hamline, Frank H. Scott, and Frank E. Lord, for appellant.

Jacob Newman, George W. Northrup, and S. O. Levinson, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge. The constitution of the United States grants to the congress the "power to promote the progress of science and useful arts by securing for limited times to authors and inventors exclusive right to their respective writings and discoveries." Article 1, § 8. The power thus granted was exercised by the congress sitting first after the adoption of the constitution. 1 Stat. 124. And, in the act, entitled "An act for the encouragement of learning," copyright for the period of 14 years was reserved to the author of any map, chart, book, or books. The congress has since frequently acted with respect to the subject, enlarging and regulating the rights of authors under the constitutional provision. 2 Stat. 171; 4 Stat. 436; 9 Stat. 106; 10 Stat. 685; 11 Stat. 138–380; 14 Stat. 395; 16 Stat. 198; Rev. St. §§ 4948–4971; 18 Stat. 78; 20 Stat. 359; 22 Stat. 181; 26 Stat. 1106. These statutes exhibit the growth in the number of subjects to which the congress of the United States has deemed the constitutional provision to be applicable. The protection originally extended to maps, charts, and books has been enlarged to comprehend books, pamphlets, maps, charts, dramatic or musical composition, engravings, cuts, prints, photographs or negatives thereof, paintings, drawings, chromos, statues, statuary, and models or designs intended to be perfected as works of the fine arts. The act of the year 1874 (18 Stat. 78, c. 301) provides that:

"The words 'engravings,' 'cuts' and 'prints' shall be applied only to pictorial illustrations or works connected with the fine arts, and no prints or labels designed to be used for any other article of manufacture shall be entered under the copyright law but may be registered in the patent office."

The clause of the constitution in question has been under consideration by the supreme court, and its purpose determined. Grant v. Raymond, 6 Pet. 218; Wheaton v. Peters, 8 Pet. 591; The Trade-

Mark Cases, 100 U. S. 82; Baker v. Selden, 101 U. S. 99; Lithographic Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279; Higgins v. Keuffel, 140 U. S. 428, 11 Sup. Ct. 731. The result of these decisions would seem to place this construction upon the constitutional provision under consideration: That only such writings and discoveries are included as are the result of intellectual labor; that the term "writings" may be liberally construed to include designs for engraving and prints that are original, and are founded in the creative powers of the mind,—the fruits of intellectual labor; that prints upon a single sheet might be considered a book, if it otherwise met the spirit of the constitutional provision; that, to be entitled to a copyright, the article must have, by and of itself, some value as a composition, at least to the extent of serving some purpose other than as a mere advertisement or designation of the subject to which it is attached. In the case before us the bound volume or catalogue issued by the appellant contains illustrations of the different wares offered for sale, giving the dimensions and prices of each. The letterpress of the book is confined to a statement of dimensions and price, is of no literary merit, and gives no other information. It is a mere priced catalogue illustrated with pictures of the wares offered for sale. The copyright is sought to be sustained upon the ground that such illustrations are of artistic merit, and so within the protection of the constitutional provision; that any picture possessing artistic merit when connected with advertising matter becomes part of the book, and is within legal protection. The particular illustrations claimed to have been copied are of a washbowl, a slop sink, a bath tub, a footbath, a sponge holder, a brush holder, and a robe hook. With the possible exception of the bath tub, neither subject has ornamentation, or could well be the subject of artistic treatment. There is some attempt at ornamentation with respect to the surroundings of the bath tub, consisting of a representation of the conventional tiled floor and tiled wainscoting. We discover nothing original in the treatment of the subject; it is merely the picture of the bath tub in ordinary use, placed in a room having a tiled floor and tiled wainscoting, with the usual supply fittings in respect of plumbing. It is said that the book may be used as a book of reference by architects and owners with respect to furnishing a house. It is a book of reference, certainly, in the sense that it may be referred to to ascertain the goods the appellant deals in, and the prices asked for them; but no information is imparted with regard to construction, or the special merits of particular construction. The pictures may appeal to the eye as pretty representations of a slop sink or a bath tub, but no one could gather from inspection how to construct them. The only information conveyed has reference to the dimensions and cost price of the article, and the place where they can be obtained. In brief, they are mere advertisements of the appellant's wares, with nice cuts or illustrations of the goods accompanying and forming part of the advertisement, as an allurement to customers. The question, therefore, which confronts us, is, were such things intended to be protected by the constitutional provision in question? The object of that provision was

to promote the dissemination of learning, by inducing intellectual labor in works which would promote the general knowledge in science and useful arts.    It is not designed as a protection to traders in the particular manner in which they might shout their wares.    It sought to stimulate original investigation, whether in literature, science, or art, for the betterment of the people, that they might be instructed and improved with respect to those subjects.    Undoubtedly a large discretion is lodged in the congress with respect to the subjects which could properly be included within the constitutional provision; but that discretion is not unlimited.    It is bounded and circumscribed by the lines of the general object sought to be accomplished.

We are referred to several cases in the courts of England in which the subject of copyright of advertisements has been considered.    It may be well to briefly examine them.

In Hotten v. Arthur, 1 Hem. & M. 603, decided in 1863, the copyright was of a catalogue of curious books offered for sale by a bookseller.    The court ruled in favor of the copyright,—not, however, sustaining the copyright of any advertisement, but upon the ground that it contained original matter, the product of intellectual labor on the part of the author,—observing:

"This is not a mere dry list of names, like a postal directory, court guide, or anything of that sort, which must be substantially the same, by whatever number of persons issued, and however independently compiled. This is a case of a bookseller who issues an account of his stock, containing short descriptions of the contents of the books, calculated to interest either the general public, or the persons who may take an interest in the questions treated by any particular books."

This case we do not consider to be pertinent to the matter in hand.

In Cobbett v. Woodward, L. R. 14 Eq. 407, decided in 1872, an upholsterer published an illustrated catalogue containing engravings of the articles of furniture he offered for sale, with remarks of description.    The injunction was denied, Lord Romilly asserting:

"I know of no law which, while it would not prevent the second advertiser from selling the same article, would prevent him from using the same advertisement, provided he did not in such advertisement, by any device, suggest that he was selling the works and designs of the first advertiser."

In Grace v. Newman, L. R. 19 Eq. 623, decided in 1875, the plaintiff was engaged in the business of a stone and marble mason.    He published a volume of lithographic sketches of monumental designs from cemeteries and churchyards.    The court ruled in favor of the injunction, observing that under the decisions in Hotten v. Arthur, supra, a catalogue may, under certain circumstances, be protected by injunction; that, while the work in question had little letterpress, it was full of interesting matter, which would often be referred to and consulted as well by persons who contemplated their own deaths, as by others in reference to those who have died.    In other words, it was a collection of designs of artistic merit, tending to the cultivation of artistic taste; it was not a catalogue of wares which the publisher of the catalogue had on hand and for sale, nor of things which he had manufactured, but it contained designs of artistic monuments

throughout England, duplicates of which the publisher proposed to make when ordered. The injunction seems to have been sustained upon the ground that it was a book of reference or of art. In Maple & Co. v. Junior Army & Navy Stores, 21 Ch. Div. 369, decided in 1882, the court flatly overruled Cobbett v. Woodward, and held that such a book or catalogue as is in question here was the subject of protection under the laws of England. It is to be observed in this case that it was ruled largely upon the language of the act of parliament. That act had for a preamble the following:

"Whereas it is expedient to amend the law relating to copyright and to afford greater encouragement to the production of literary works of lasting benefit to the world."

This was followed by an enacting clause, as follows:

"The word 'book' shall be construed to mean and include every volume, part or division of a volume, pamphlet, sheet or letter-press, sheet of music, map, chart or plan separately published." And "the' word 'copyright' shall be construed to mean the sole and exclusive right of printing or otherwise multiplying copies of any subject to which the said work is herein applied."

The court ruled that the act does not say "that it is expedient to afford greater encouragement to the production of literary works of lasting benefit to the world and to amend the law of copyright relating thereto," but that it is expedient to amend the law of copyright generally, merely adding the principal reason of doing so; that there was nothing in the preamble to cut down the enacting part, even if the enacting part had not been clear; and that there was nothing in the act to exclude a book consisting of pictures only, or to restrict the act to books containing letterpress. It is to be here remarked that the parliament of Great Britain, unlike the congress of the United States, is unlimited in power; and, with the construction and effect placed upon the preamble of the act by the court, there would seem to be little escape from the conclusion to which the court arrived. In this country, under the constitution, the power lodged with congress is not unlimited, but is restricted to the promotion of the progress of science and useful arts. The ruling of the English court is therefore not pertinent, except as it illustrates the subject. It is further to be said that the case of Cobbett v. Woodward, overruled by the case of Maple & Co. v. Junior Army & Navy Stores, has been expressly approved and quoted at length by the supreme court of the United States. Baker v. Selden, 101 U. S. 99, 105, in which case the court also cited approvingly the remarks of Mr. Justice Thompson in Clayton v. Stone, 2 Paine, 382, Fed. Cas. No. 2,872, in which it was said that the acts of congress in respect to copyright were intended for the encouragement of learning, and were not intended for the encouragement of mere industry, unconnected with learning and the sciences. In this latter case a daily price current was held not to be within the purview of the copyright law, and it was said that:

"The act in question was passed in execution of the power here given [by the constitution], and the object, therefore, was the promotion of science; and it would certainly be a pretty extraordinary view of the sciences to consider a daily or weekly publication of the state of the market as falling within any

class of them. They are of a more fixed, permanent, and durable character. The term 'science' cannot with any propriety be applied to a work of so fluctuating and fugitive a form as that of a newspaper or price current, the subject-matter of which is daily changing, and is of mere temporary use. Although great praise may be due to the plaintiffs for their industry and enterprise in publishing this paper, yet the law does not contemplate their being rewarded in this way. It must seek patronage and protection from its utility to the public, and not as a work of science."

In the Sarony Photograph Case (4 Sup. Ct. 279), the court ruled that it was within the constitutional power of congress to confer upon the inventor, designer, or proprietor of a photograph a copyright, so far as the photograph is an interpretation of original, intellectual conception. The court declined to decide whether the copyright law is applicable to the ordinary production of a photograph, but, with respect to the particular photograph then before the court, held that it was entitled to protection as a work of art originating in the mental conception of the author, which was given visible form and expression by the selection and arrangement of various accessories; and upon that ground alone, as we read the opinion, the copyright was sustained. In the later case of Higgins v. Keuffel, 140 U. S. 428, 11 Sup. Ct. 731, the court observes that the provision of the constitution "evidently has reference only to such writings and discoveries as are the result of intellectual labor"; and, "to be entitled to a copyright, the article must have by itself some value as a composition, at least to the extent of serving some useful purpose other than as a mere advertisement or designation of the subject to which it is attached." So far as the decisions of the supreme court have gone, we think they hold to the proposition that mere advertisements, whether by letterpress or by picture, are not within the protection of the copyright law. It is possibly not beyond comprehension that pictures of slop sinks, washbowls, and bath tubs, with or without letterpress statement of dimensions and prices, though intended mainly for advertisement, may, in localities where such conveniences are not in common use, be the means of instruction and of advancement in knowledge of the arts, and, when they are the product of original, intellectual thought, may possibly come within the scope of the constitutional provision. It is enough for the present purpose to say that, in our judgment, congress has not seen fit to enact a law which can reasonably be given so broad a construction. The decree will be affirmed.