TRIBUNE CO. OF CHICAGO v. ASSOCIATED PRESS.

(Circuit Court, N. D. Illinois. February 20, 1900.)

1. COPYRIGHT—MATTER WHICH MAY· BE COPYRIGHTED—NEWSPAPERS.
     There can be no general copyright, as an entirety, of a daily news--
     paper, which is composed in large part of matter not entitled to pro--
     tection.

2. SAME—FOREIGN PUBLICATIONS—MATTER FROM FOREIGN NEWSPAPER.
     The Chicago Tribune by agreement secured the right to use such parts-
     of the special war dispatches of the London Times, and its editorial
     comments thereon, as the Tribune might select and telegraph to Amer-
     ica, and the Times abandoned in favor of the Tribune "any copyright
     in those telegrams so far as publication in America is concerned." The
     selections were made and cabled from the Times office, and were pub-
     lished in the Tribune on the same morning as in the Times, though some
     hours later. ˙A copy of each issue of the Tribune was deposited for
     copyright as an entirety. ˌHeldˌ, that this was not such a copyright of
     the special matter obtained under the contract, nor such a simultaneous-
     publication, as to give the Tribune the exclusive right under the statute
     to publish the same in the United States, and that· it was not entitled
     to an injunction to restrain the Associated Press from taking such mat-
     ter from the columns of the Times after its publication in England.
     and furnishing the same by cable to the other American papers, in
     which it was published on the same˙ morning as in the Tribune.

In Equity. On motion for preliminary injunction to restrain al-
leged infringement of copyright, based on bill and answer and on
certain stipulated exhibits.

History of the case: The Chicago Tribune, by agreement with the Lon-
don Times, secured for use in the Tribune's columns the war news especially
gathered by the Times, and its editorial comments thereon. The Times,
which is copyrighted each day, released its copyright as to such articles as
the Tribune's correspondent might choose to forward to his paper; the
Tribune undertaking to copyright its daily edition simultaneously with the
copyrighting of the Times. On the other hand, the London correspondents
of the Associated Press, buying the Times as it appeared upon the streets,
selected such items as they chose and forwarded them to America. This
news the Tribune sought to restrain the Associated Press from using, and
asked damages in the sum of $100,000. The question was heard on bill and
answer.

Collins & Fletcher, L. L. Coburn, and A. S. Trude, for complainant.
Wilson, Moore & McIlvaine, for defendant.

SEAMAN, District Judge. The publications in controversy are
contained in daily newspapers, and relate to news of the South African
war and editorial comments appearing in the London Times, abstract-
ed on the part of the Tribune Company immediately before publica-
tion in London, under an arrangement with the publishers of the
Times, and cabled to the Tribune by the agent of the latter, and
published in its first edition in Chicago on the same morning of the
publication in the Times, the difference in time between this country
and London favoring such result. The bill avers that the defendant
procures the matter so cabled from the first edition of the Tribune,
and furnished it to the morning papers of the association for ap-
pearance in their second edition; but this allegation is clearly dis-

proved by the answer and exhibits of original cablegrams, showing that the matter furnished by the Associated Press is taken by its agency in London from the Times immediately after publication, cabled to New York, and thence transmitted to the papers of the association. It further appears that the Tribune, as one of its members, received the matter so selected by the defendant, and that in two instances at least material portions of the matter inadvertently stated in the bill as pirated from the Tribune was in fact furnished by the Associated Press, and not by the Tribune agency. Other portions of the publications so specified are, however, coincident selections from the Times, and constitute infringements, if the Tribune Company is entitled to and obtained copyright for its authorized selections, and may thus exclude the defendant from like selections made immediately after their publication in the Times, and without express notice of such prior selection by the Tribune.

The questions thus raised are important and novel, involving, on the one hand, the rights of the Tribune Company to the fruits of its enterprise and expenditure under its contract arrangement with the Times, and, on the other hand, the rights of the public to news matter thus published in the leading English newspaper. Solution of the inquiry depends upon a construction of the copyright statutes of the United States, and not upon the common-law rights of literary property beyond their consideration in construing the statute. Literary property is protected at common law to the extent only of possession and use of the manuscript and its first publication by the owner,—a right well exemplified in Publishing Co. v. Monroe, 19 C. C. A. 429, 73 Fed. 196, 38 U. S. App. 410. With voluntary publication the exclusive right is determined at common law, and the statutory copyright is the sole dependence of the author or owner for a monopoly in the future publication. Unless the United States statute is applicable to protect the Tribune's publications in question, it is clear that the motion for an injunction must fail.

The alleged copyright is obtained by depositing in the post office at Chicago, on the evening before publication, the general title of the newspaper, "Chicago Daily Tribune," with serial number and date, and by like deposit, immediately after publication, of copies of the completed paper, each addressed to the librarian of congress, and followed by registration and certificate in due course. No special matter is thereby indicated as subject to copyright, but the newspaper is so entered as an entirety. It is at least questionable whether a copyright can thus be secured for a newspaper. In the early case of Clayton v. Stone, 2 Paine, 382, Fed. Cas. No. 2,872, Mr. Justice Thompson, presiding at the circuit, held that the constitutional provision for copyright "cannot with any propriety be applied to a work of so fluctuating and fugitive a form as that of a newspaper or price current, the subject-matter of which is daily changing and is of mere temporary use." And these remarks are quoted with approval in the opinion of the supreme court by Mr. Justice Bradley in Baker v. Selden, 101 U. S. 99, 25 L. Ed. 841, and in the opinion of Judge Jenkins, speaking for the circuit court of appeals, in Iron Works

v. Clow, 27 C. C. A. 250, 82 Fed. 316, 53 U. S. App. 461. However the rule may be in reference to original matter published in such form, I am of opinion that there can be no general copyright of a newspaper composed in large part of matter not entitled to protection.

Aside from this view affecting the validity of the copyright, on the showing that the defendant obtains its matter for publication directly from the London Times, and without knowledge or notice of any selections by the complainant, the statute is not applicable, unless through the contract rights of the Tribune it operates to exclude from general publication all cablegrams and editorials appearing in the London Times. The contract referred to gives a right to the Tribune "to publish in America such cablegrams and editorials" as it chooses to "telegraph to America from the Times," and the latter abandons in favor of the Tribune "any copyright in those telegrams so far as publication in America is concerned." The optional rights thus acquired by the Tribune extend to all cablegrams appearing in the Times, although the purported surrender for copyrights relates to the extracts only, and until after the Tribune has both made and published its selections no means are open to the public to ascertain the portion thus excluded from use; and it further appears that many of the cablegrams in the Times are not its sole property. As the exclusive right of publication at common law terminates with the publication in London, no protection then exists beyond that expressly given by the statute. Before the amendment authorizing copyright in America on foreign publications, under prescribed conditions where the publication is simultaneous, such foreign property right was left unprotected. Under the amendment, whatever rights may be vested either in the Times, or in the Tribune through contract with it, to copyright any editorials or special matter, I am satisfied that it can be exercised only for matter distinctly set apart for the purpose and so distinguished in the publication, and that the publication in this country must be substantially identical with that in the foreign country, to bring it within the intent of the statute.

The matter in controversy, as mere selections from several cablegrams and editorials in the Times, not predesignated for copyright here and not so intended on behalf of the Times, does not seem to conform to the statutory requirements.

I am of opinion that injunction cannot issue on the case presented, and the motion is denied.