COURIER LITHOGRAPHING CO. v. DONALDSON LITHOGRAPHING CO.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1900.)

No. 819.

COPYRIGHT—PICTURES AND PRINTS—ARTISTIC VALUE.

A chromo, lithograph, or other print, engraving, or picture which has no other use than that of a mere advertisement, and no artistic or intrinsic value aside from such function, is not promotive of the useful arts, within the meaning of Const. art. 1, § 8, and is not within the protection of the copyright statute.

In Error to the Circuit Court of the United States for the District of Kentucky.

This was an action by the plaintiffs in error based upon section 4965 of the Revised Statutes of the United States as amended by the acts of March 3, 1891, and March 2, 1895, to recover the penalties prescribed for infringement of copyrights. The petition set forth three separate causes of action under that section, and alleged that the defendant had violated the plaintiffs' copyrights in three different lithograph prints, copyrighted under the following titles: (1) "Spectacular Ballet Design;" (2) "Stirk Family Design;" (3) "Statuary Act Design." The marshal seized, on the day the action was begun, 10,500 copies of the infringing publication in an eight-page form, 13,205 copies of a four-page form, and five metal electrotype plates, found in the possession of the defendant. The copyrighted articles are in colors, and are properly chromo lithographs. The alleged infringements are smaller reproductions, not in colors, made from electrotype plates. At the conclusion of the evidence for the plaintiffs the court instructed the jury to return a verdict for the defendant. There were some exceptions to the exclusion of evidence offered by the plaintiffs, but none of the errors assigned thereon are material, as the case must turn upon the questions involved in the instruction to find for the defendant. The plaintiffs sue as members of a joint-stock association under the law of New York, known as the "Courier Company," but doing a part of their business under the name of the "Courier Lithographing Company." Two of the copyrights in question were copyrighted in the name of the "Courier Company," and one in the name of the "Courier Lithographing Company," —that known under the title of the "Statuary Act Design." The titles of the first two named were deposited with the librarian of congress, April 11, 1898. The last was deposited April 18, 1898, though it was in evidence that the application and title were deposited in the mail addressed to librarian of congress on April 15, 1898. A large number of prints of each of said designs were shipped April 11, 1898, by the plaintiff company from Buffalo, N. Y., to the agent of the Wallace Circus, at Peru, Ind., for circulation and distribution. The time of arrival at Peru is not shown. The evidence established that these prints were ordered by E. B. Wallace, proprietor of a circus known as the "Wallace Show," as advertising matter for the show. Plaintiffs' evidence tended to show that Mr. Wallace's order constituted what is styled an order for "special paper,"—that is, they were show bills designed especially for him, and which are sold only to the person making the order so long as he chooses to supply himself with them for his show. The witness said that "if he ceases to use that bill, say he does not do the 'Statuary Act' next year, we have the right to sell the design to other people who may want to use that sort of thing." Plaintiffs' evidence also tended to show that the "design" or "conception" was that of an employé working under a salary for them, and that his "designs"

104 F.—63

were the property of the employer, and therefore copyrighted by them. The "Spectacular Ballet Design," as shown by the print itself, is a picture of a number of ballet dancers in the conventional dress,—short skirts, tights, bare shoulders and arms. The "Stirk Family Design" is a representation of fancy bicycle riding by male and female riders. The "Statuary Design" is a representation of the landing of Columbus and several other historic or classic events. All purport to be representations of acts to be done in the Wallace show, and all were made under a representation by Wallace that his show was going to do these things, and that he wished these acts represented on colored bills for exhibition in windows as advertisements for his show. All the bills contained reading matter indicating that these were acts to be done in Wallace's show, and included pictures of Mr. Wallace himself. The copies of the several publications, deposited as required by the statutes with the librarian of congress, included this reading matter and picture of Mr. Wallace. By comparing the copyrighted prints with those seized and put in evidence as proof of infringement, it is shown that the latter are also show bills for the Wallace show. Though diminished in size, and printed only in black ink, they appear to be substantially reproductions of the designs in the copyrighted publications. There was no evidence touching the originality of any of these designs other than the general statement of one of the plaintiffs that Mr. Wallace represented that these acts were to be done in his show, and that the designs as copyrighted were "the creations of our employés." Evans, district judge, was strongly of opinion that none of the copyrighted prints were entitled to be copyrighted, and upon this and other grounds, unnecessary to be now considered, so instructed the jury.

Ansley Wilcox, for plaintiffs in error.

E. W. Kittredge and Orris P. Cobb, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

The copyrighted chromos or prints were designed to be pictorial representations of acts done in the Wallace Circus. That they were designed and intended for advertising purposes only is indisputable. They may be "creations" in the sense that they are not exact reproductions of the acts they advertise. But that the arrangement, pose, color, grouping, or expression is new or original does not appear in the evidence, nor can we assume it from an examination of the prints themselves. Aside from this function as advertisements, we are unable to discover that they have any use whatever, or that they have any intrinsic merit or value. But they are "chromos" or "prints," and chromos and prints are included in the list of productions which, under the statute, may be copyrighted. But are all chromos and prints unqualifiedly entitled to the protection of the copyright law? Must such a construction be given the statute? The power of congress in this respect is derived from that section of article 1 of the constitution which gives to it the power "to promote the progress of science and useful arts, by securing for limited terms to authors and inventors the exclusive right to their respective writings and discoveries." In the Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550, the court held that "while this word, 'writings,' may be liberally construed, as it has been, to include original designs for engravings, prints, etc., it is only such as are original, and are founded in the creative powers of the mind." In Lithographic Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279, 28 L. Ed. 349, the court ap-

proved the definition of "author" by Lord Justice Cotton in Nottage v. Jackson, 11 Q. B. Div. 627, where the distinguished judge said: "In my opinion, 'author' involves originating, making, producing, as the inventor or master mind, the thing which is to be protected, whether it be a drawing, or a painting, or a photograph." In the Sarony Case, just cited, the court reserved the question as to whether an ordinary photograph was the subject of a copyright, but sustained a copyright upon a finding of fact that it was "a useful, new, harmonious, graceful picture, and that plaintiff made the same entirely from his own original mental conception, to which he gave mental form by posing the said Oscar Wilde in front of the camera, selecting and arranging the costume, draperies, and other accessories in said photograph, arranging the subject so as to present graceful outlines, arranging and disposing the light and shade, suggesting and evoking the desired expression." In other words, the court found that a photograph might be something more than a mere mechanical and chemical product, and might rise to the dignity of art, through the blending of the mechanical parts of the process with the original intellectual conceptions of an artist. Commenting upon the fact that, under our copyright law, it is only necessary to deposit the title and two copies of the publication to secure a copyright, and that no tribunal, as is the case in respect of an application for a patent, is provided for passing upon the originality of the matter offered for copyright, the court in the same case said:

"It is therefore much more important that, when the supposed author sues for a violation of his copyright, the existence of those facts of originality, of intellectual production, of thought and conception on the part of the author should be proved than in the case of a patent right."

In Higgins v. Keuffel, 140 U. S. 428, 11 Sup. Ct. 731, 35 L. Ed. 470, the court, referring to the constitutional power of congress over the subject of copyrights, said:

"It does not have any reference to labels, which simply designate or describe the articles to which they are attached, and which have no value separated from the articles, and no possible influence upon science or the useful arts. A label on a box of fruit, giving its name as 'grapes,' even with the addition of adjectives characterizing their quality as 'black' or 'white' or 'sweet,' or indicating the place of their growth, as Malaga or California, does not come within the object of the clause. The use of such labels upon those articles has no connection with the progress of science and the useful arts. So a label designating ink as 'black,' 'blue,' or 'red,' or 'indelible,' or 'insoluble,' or as possessing any other quality, has nothing to do with such progress. It cannot, therefore, be held, by any reasonable argument, that the protection of mere labels is within the purpose of the clause in question. To be entitled to a copyright, the article must have by itself some value as a composition, at least to the extent of serving some purpose other than as a mere advertisement or designation of the subject to which it is attached."

In Baker v. Selden, 101 U. S. 99, 106, 25 L. Ed. 844, the court quote with seeming approval from the case of Cobbett v. Woodward, L. R. 14 Eq. 407, where it was held that an illustrated catalogue of furniture was not the subject of copyright when it was designed "solely for the purpose of advertising particular articles for sale, and promoting the private trade of the publisher by the sale of articles

which any other person might sell as well as the first advertiser." The same ruling was made by Woodruff, circuit judge, in Collender v. Griffith, Fed. Cas. No. 3,000. Cobbett v. Woodward has since been overruled, but, as pointed out by Jenkins, circuit judge, in Iron Works v. Clow, 27 C. C. A. 250, 82 Fed. 320, the cases overruling it are to some extent due to the difference between the English statutes and our own, and therefore not pertinent. In Iron Works v. Clow, cited above, the court of appeals for the Seventh circuit reached the conclusion that "mere advertisements, whether by letter, press, or by pictures, are not within the protection of the copyright law." The exigencies of the case in hand do not require that we should express any opinion upon the broad subject. It may be that a picture, or lithograph, or engraving, though intended to be reproduced in prints and used as an advertisement, is entitled to the protection of the copyright law, notwithstanding the use for which it is designed. In Yuengling v. Schile (C. C.) 12 Fed. 97, 101, a chromo entitled "Gambrinus and his Followers," intended as a glorification of lager beer drinking, and designed and circulated as an advertisement of the publisher's business as a lager beer brewer, was regarded by Brown, district judge, as the proper subject of copyright. The learned judge distinguished the matter from the case of Cobbett v. Woodward, Collender v. Griffith, and Ehret v. Pierce (C. C.) 10 Fed. 553, upon the ground that the copyrighted articles in these cases were not works of art, and had no value as such, and were mere modes of advertising. The chromo of Gambrinus in question, he held, was "a work of the imagination, and has such obvious artistic qualities as in my judgment render it fairly a subject of copyright, without regard to the use which the plaintiff has made or may intend to make of it." To the same effect is the case of Schumacher v. Schwencke (C. C.) 25 Fed. 466, and the case of Lamb v. Furniture Co. (C. C.) 39 Fed. 474.

What we hold is this: that if a chromo, lithograph, or other print, engraving, or picture has no other use than that of a mere advertisement, and no value aside from this function, it would not be promotive of the useful arts, within the meaning of the constitutional provision, to protect the "author" in the exclusive use thereof, and the copyright statute should not be construed as including such a publication, if any other construction is admissible. If a mere label simply designating or describing an article to which it is attached, and which has no value separated from the article, does not come within the constitutional clause upon the subject of copyright, it must follow that a pictorial illustration designed and useful only as an advertisement, and having no intrinsic value other than its function as an advertisement, must be equally without the obvious meaning of the constitution. It must have some connection with the fine arts to give it intrinsic value, and that it shall have is the meaning which we attach to the act of June 18, 1874, amending the provisions of the copyright law.

We are unable to discover anything useful or meritorious in the design copyrighted by the plaintiffs in error other than as an advertisement of acts to be done or exhibited to the public in Wal-

lace's show. No evidence, aside from the deductions which are to be drawn from the prints themselves, was offered to show that these designs had any original artistic qualities. The jury could not reasonably have found merit or value aside from the purely business object of advertising a show, and the instruction to find for the defendant was not error.

Many other points have been urged as justifying the result reached in the court below. We find it unnecessary to express any opinion upon them, in view of the conclusion already announced. The judgment must be affirmed.