### JEWELERS' CIRCULAR PUB. CO. v. KEYSTONE PUB. CO.

(District Court, S. D. New York. July 13, 1921.)

1. **Copyrights ⬅5—Of jewelers' directory, containing cuts of trade-marks, held valid.**

   A directory of the jewelry trade, containing the names and addresses of jewelers, with their respective trade-marks, illustrated by cuts made from sketches or photographic copies of the trade-marks, *held* subject to copyright under Act March 4, 1909, § 5, subd. "a" (Comp. St. § 9521[a]), which copyright protected the cuts.

2. **Copyrights ⬅58—Of trade-mark directory held infringed.**

   A copyright of a trade directory containing cuts of trade-marks *held* infringed by a defendant, which clipped therefrom the cuts and, after submitting them for approval to the owners of the trade-marks, reproduced them in another similar publication.

3. **Copyrights ⬅53—Ownership of trade-mark gives no right to copy copyrighted picture of it.**

   The fact that one owns a trade-mark gives him no right to copy a picture of it copyrighted by another, nor can he give a third person the right to use the picture's copy.

4. **Copyrights ⬅71—Infringing copies not subject to seizure in hands of innocent bailees.**

   Where a defendant furnished to its customers for their use copies of a directory published by it, which infringed complainant's copyright, but retained title with the right to recall the books on demand, complainant *held* not entitled to a writ of seizure under the Supreme Court rules to take the books from the bailees, but required to enforce its right to their destruction under Act March 4, 1909, § 25, subd. "d" (Comp. St. § 9546[d]), through an order requiring defendant to recall the same.

In Equity. Suit by the Jewelers' Circular Publishing Company against the Keystone Publishing Company. Decree for complainant.

This case comes up upon exceptions to a report of Hon. E. Henry Lacombe, special master, filed June 9, 1921. Both parties except, but it will be necessary only to take up the defendant's exceptions, which raise only questions of law.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The suit is in equity for infringement of a copyright, the evidence being referred to a master in the first instance. The plaintiff is the publisher of the periodical of the jewelry trade known as the "Jewelers' Circular," which in 1915 published and copyrighted a third edition of its Trade-Mark Directory, called Trade-Marks of the Jewelry and Kindred Trades. This book contained the names and addresses of jewelers classified under different heads, arranged alphabetically, and opposite the name of each jeweler appeared the trade-names and trade-marks used by him. It was the result of considerable past labor, and was sold in large quantities to the trade at $5 a volume. The information contained in it had been obtained by direct inquiry from the jewelers, and the illustrations of the trade-marks were printed from cuts generally prepared by the plaintiff personally. In some cases the trade-mark owner would himself send an illustration printed upon his stationery in such form that it could be photographically transferred to the surface of a cut which could be directly used in printing. In many cases the plaintiff got either a sketch, or the impression of a die upon metal or paper. In such cases a drawing of the sketch or impression must be made by a draftsman, which should be suitable for photographic transfer, and a cut was made from which the printing could be done.

The defendant, in October, 1920, made up a book called the "Jewelers' Index," in several sections; one, the trade-mark section, of 88 pages, answering the same purposes as the plaintiff's and containing the same information. In preparing this section, after some preliminary and ineffectual inquiries, which are not necessary to mention here, the defendant sent to each jeweler whose name it proposed to insert in the "Index," a letter, asking him to send "a cut of inclosed trade-mark of yours, also cut of any other trade-marks you are now using. * * * We trust you will make a special effort in sending cuts. * * * Send cuts same size (smaller, if possible and convenient) to Jewelers' Index. * * * If unable to furnish cut, send detailed description of trade-mark. * * * If you use different trade-marks for various items, please send cuts and specifications. * * * Assuring you cuts or electros will be returned as soon as possible, we remain," etc. Along with this letter and fastened thereto was a printed illustration of the trade-marks which were supposed to belong to the jeweler in question, and these were clipped direct from the plaintiff's book.

In most cases the jeweler did nothing but return the clipping so inclosed, with a statement that it correctly represented his trade-marks. In some instances, he simply sent back the clipping without comment, and in others it did not appear that the letter was answered at all. The master found in all cases that the defendant in good faith supposed that the clipping which it copied and republished in the "Index" had had the assent of the jeweler against whose name it was entered. While a large part of the trade-mark section of the defendant's book was made up in this way, there were some instances in which the jeweler sent cuts directly, having perhaps himself made the cuts from the illustration sent by the defendant, originally clipped from the plaintiff's book. In many instances Miss Clark, the draftsman for the plaintiff, had made errors in drawing the trademarks, some of which plaintiff had not corrected. These remained in the defendant's book, being mechanically reproduced as part of the trade-mark proper.

The plaintiff, after the return of the master's report, procured a writ of seizure under the Supreme Court rules, and has seized those copies of the "Index" which still remained in the defendant's hands. The latter had distributed the book gratuitously as an advertisement among the trade, but the copies so distributed remained its property, and subject to recall at its request. It is the purpose of the plaintiff to seize all these copies in the hands of the defendant's customers and impound them, subject to forfeiture and destruction, under section 25 (c) and (d), of the Copyright Act (Comp. St. § 9546), and under the Supreme Court rules.

The defendant raises the following points: (1) That the plaintiff's book is not protected by copyright, as it is only a list of prints or labels designed to be used for articles of manufacture, and as such within section 3 of chapter 301 of the Statutes of 1874 (18 Stat. 79) ; (2) that the "Index" is not an

infringement, because the defendant was entitled to use the plaintiff's book in the way that it did. Having in each case, as the special master found, verified the accuracy of the information contained in the plaintiff's book, it regards itself free to repeat that information, under the supposed rule of Edward Thompson Co. v. American Law Book Co., 122 Fed. 922, 59 C. C. A. 148, 62 L. R. A. 607. It also contends that the plaintiff should be enjoined from seizing those copies which are now in the hands of its own customers.

W. H. Swenarton, of New York City, for plaintiff.
Robert C. Beatty, of New York City, for defendant.

LEARNED HAND, District Judge (after stating the facts as above).
[1] First, as to validity: I think that the plaintiff's book is clearly a "directory" or an "other compilation;" and as such it falls within section 5 (a) of the Copyright Act (Comp. St. § 9521[a]). Under section 6 (Comp. St. 9522) it is not necessary in such cases that the matter compiled should itself be copyrighted; it may be in the public domain. Therefore it is altogether immaterial that the trade-marks themselves could not be copyrighted, or whether section 3 of chapter 301 of the Laws of 1874 still remains in force. If the trade-marks be "prints" at all, under section 5 (k) of the Copyright Act, I may assume that, being designed for use on articles of manufacture, they cannot be copyrighted. Royal Sales Co. v. Gaynor, 164 Fed. (C. C.) 207, was the case of a single print or label; it does not touch this case. J. L. Mott Iron Works v. Clow, 82 Fed. 316, 27 C. C. A. 250 (C. C. A. 7th), was, however, closer. There the copyrighted work was a trade catalogue, consisting of a collection of photographic illustrations of bathtubs and the like. It was denied protection chiefly on the ground that it was an advertisement, but also in part because it was thought to have no æsthetic quality. In both respects the case must be considered overruled by Bleistein v. Donaldson Lithographing Co., 188 U. S. 239, 23 Sup. Ct. 298, 47 L. Ed. 460, and it has been so treated subsequently. J. H. White Co. v. Shapiro (D. C.) 227 Fed. 957. See, also, Da Prato Statuary Co. v. Quiliani Statuary Co. (C. C.) 189 Fed. 90.

In any event, the plaintiff's book was not an advertisement, and in so far as Miss Clark, the plaintiff's draftsman, prepared free-hand drawings from the impressions of the trade-marks, it cannot possibly be said that there was no element of æsthetic quality, whether it was bad or good, and however æsthetic quality is defined. In those instances in which the trade-mark owners sent on illustrations which could be directly transferred to cuts by photography, it might indeed be argued that J. L. Mott Iron Works v. Clow, supra, might still apply. Burrow-Giles Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279, 28 L. Ed. 349, left open an intimation that some photographs might not be protected, and this possibility was emphasized in J. L. Mott Iron Works v. Clow, supra. I think that, even as to these, Bleistein v. Donaldson Lithographing Co., supra, rules, because no photograph, however simple, can be unaffected by the personal influence of the author, and no two will be absolutely alike. Moreover, this all seems to me quite beside the point, because under section 5 (j) photographs are protected, without regard to the degree of "personality" which enters into them. At least there

has been no case since 1909 in which that has been held to be a condition. The suggestion that the Constitution might not include all photographs seems to me overstrained. Therefore, even if the cuts be deemed only photographs, which in these supposed cases they are, still I think that they and the illustrations made from them may be protected.

[2] Second, as to infringement: Any directory is a compilation, without opportunity for variety in the statement of the facts recorded. All are free to repeat those facts, just because they are facts. Strictly, it might have been logical, therefore, to deny it any protection, till the statute expressly granted one. That was not, however, the law before the act of 1909 (List Publishing Co. v. Keller [C. C.] 30 Fed. 772; Sampson & Murdock Co. v. Seaver-Radford Co., 140 Fed. 539, 72 C. C. A. 55 [C. C. A. 1st]), and it could not be even argued afterwards. Yet in some way subsequent compilers must be allowed to state the same facts, and the question became what independent work they must do to acquire the requisite knowledge. Every one concedes that a second compiler may check back his independent work upon the original compilation, but there has been some dispute whether he may use the original compilation after simply verifying its statements, or whether he must disregard the assistance of the original, except in subsequent verification. I do not find it necessary to determine that question in this case, or to decide whether there is a conflict between Sampson & Murdock Co. v. Seaver-Radford Co., supra, and Edward Thompson Co. v. Amer. Law Book Co., 122 Fed. 922, 59 C. C. A. 148, 62 L. R. A. 607 (C. C. A. 2d).

[3] It appears to me quite enough that here the defendant copied the illustrations made by the plaintiff. If those were protected, to copy them would be to infringe. Suppose, for example, that, instead of describing the trade-marks pictorially, the plaintiff had done so verbally. the defendant would have been, of course, entitled to describe them anew, and it would have made no difference that his description and the plaintiff's tallied to the letter. Still no one would contend, I suppose, that he could lift the plaintiff's verbal description and use it bodily merely by getting it verified by the owner. In that case it would be obvious that he had copied the plaintiff's work. Exactly the same thing was done here. The plaintiff's illustration was not the trade-mark itself, but a picture of it, prepared by the plaintiff. The defendant was as much bound to make an independent picture of the object itself as he would have been obliged to make an independent verbal description. This obligation is quite independent of his right, if he have the right, to repeat any facts which he may first learn from a copyrighted work and later verify. Only the case of an ordinary directory can raise the question of such a right, because in a directory there is but one way to state the facts, and a subsequent compiler cannot copy the form of expression of the earlier, because there is no form. When, however, there is any such form, however intangible and difficult to distinguish as such, then the second compiler must depend upon his own resources to express the facts independently. He may not use the form. For the reasons already given, it seems clear to me that the "Index" was an infringement in respect of all the cuts used to print it, which were made

from illustrations of the same trade-mark published in the plaintiff's book. Even as respects those received direct from the trade-mark owners, they as little as any one else could use the plaintiff's illustrations to make cuts. The defendant would be innocent as to these, but the infringement would exist notwithstanding. The fact that one owns a trade-mark gives him no right to copy a picture of that mark, nor can he give another the right to use the picture's copy.

It follows that the defendant must be enjoined from publishing and distributing the trade-mark section of the "Index," and must be directed to recall all those copies over which it has retained the right of recall. This must be done within 20 days after decree filed. The plaintiff may also have an accounting for damages, or I will fix them under section 25 (b), if they cannot be specifically proved. I assume that no accounting for profits will be asked, as I do not see how any could be proved. Allowances will wait for final decree.

[4] There remains a question under section 25 (c) and (d) and the writ of seizure. The defendant has already surrendered all copies of the "Index" in its possession under section 25 (c) and the Supreme Court rules. Section 25 (c), with the rules, is ancillary to section 25 (d), for I take it as patent that the "impounding" is only to assure the eventual destruction of the infringing articles. It appears to me as significant that the only provision for the destruction of infringing copies is section 25 (d), which makes it one of the remedies against an infringer that he shall "deliver up on oath," etc. Yet, under section 32 (Comp. St. § 9553), all piratical copies imported may be seized and destroyed in the hands of any one. Thus there is a distinction between a piratical copy not imported, which, if sold, is not subject to seizure in the hands of one not an infringer, and an imported piratical copy, which is.

The writ of seizure authorized by the Supreme Court rules as the proper procedure to enforce section 25 must, of course, be read upon the statute, and if I am right no marshal should seize any copies which had been sold to persons not infringers; it must be remembered that use does not make one an infringer as in the case of a patent. In the case at bar the books were not sold, but were in effect lent to the defendant's customers, subject to recall at its pleasure. Clearly, however, the customers had full possession of the books; they were bailees, entitled to beneficial use of the property, and not agents, acting on behalf of the defendant. The bailment under civil law would have been a commodatum, and not either a depositum or a mandatum.

Now, it is true that at first blush it might seem (the bailment being determinable at will by the bailor) that the writ of seizure might interrupt the bailee's possession, precisely as it can the bailor's. Yet it appears to me that this would be improper. The statute, which is highly penal, cannot be supposed to go further than it says, and it is expressly limited to infringers; all rights, including the right of possession by others, must be immune from violent interruption, unless there is express warrant for it. And so the possession of innocent bailees should be respected, because it is legal, and should be disturbed only under the terms of the agreement which created it. They are free to enjoy the piratical copies, subject to the reserved rights of the defend-

ant. If so, the plaintiff must work out its right to forfeit through the defendant's right to recall the books, and will be enjoined from its proposed course of seizing these books in the hands of the defendant's customers. There is an especial ground in equity for this, because, while such violence would be extremely disastrous to the defendant's business, it could not possibly benefit the plaintiff if the defendant recalls the books within a short time.

Settle decree on notice.