**ROCKFORD MAP PUBLISHERS, INC.,**
Plaintiff-Appellee,

v.

**DIRECTORY SERVICE COMPANY OF COLORADO, INC. and Frances A. Anderson, Defendants-Appellants.**

No. 84–2301.

United States Court of Appeals,
Seventh Circuit.

Argued May 20, 1985.

Decided July 15, 1985.

Rehearing and Rehearing En Banc
Denied Aug. 23, 1985.

Richard G. Lione, William Brinks Olds Hofer Gilson & Lione, Ltd., Chicago, Ill., for defendants-appellants.

Michael C. Payden, Leydig, Voit & Mayer, Ltd., Rockford, Ill., for plaintiff-appellee.

Before BAUER and EASTERBROOK, Circuit Judges, and CAMPBELL, Senior District Judge.*

EASTERBROOK, Circuit Judge.

A plat map shows the location, size, and ownership of parcels of land. Rockford Map Publishers makes plat maps of rural counties. They are useful to local residents and to sellers of farm equipment, who can learn the identities and needs of potential customers. Doubtless they have other uses as well.

Rockford Map starts with aerial photographs distributed by the Department of Agriculture. It traces the topographical features from the photographs and draws lines showing townships and sections. Then an employee goes to places where land titles are recorded and reads the books. The employee uses the legal descriptions of the deeds to draw boundary lines indicating the location and size of each parcel. He pencils in the name of the owner. From time to time Rockford Map updates the maps as ownership of land changes. Figure 1 is the result for one township in Ford County, Illinois.

Rockford Map has repeated this process for more than 500 counties throughout the United States. The first plat of Ford County was prepared in 1948, and a new one was prepared from scratch in 1956. Rockford Map published updated versions of the Ford County plat maps in 1961, 1964, 1966, 1969, 1972, 1974, 1976, 1977, 1979, 1981, and 1983. The copyrights of several revisions, including the one in 1983, were registered. The most recent update took about 14 hours' work in the Ford County Courthouse. An employee of Rockford Map estimated that it would have taken him between 40 and 45 hours to do the research for Ford County from scratch.

Directory Service Co. also publishes plat maps. It starts with a square grid and draws in the information about ownership without regard to topographical features. When Directory Service decided to do a plat map of Ford County, it hired a local resident and gave her instructions about how to interpret information in the title records. In order to make her task easier, Directory Service enlarged Rockford Map's plat maps for Ford County. Directory Service told its agent to check the records using Rockford Map's map as a worksheet.[1] If a search of the records revealed that Rockford Map's map was correct, the agent put a green check in the space depicting the parcel of land; if the map was incorrect, the agent overwrote the map in red. The agent also recorded information about parcels Rockford Map had deemed too small to put on its plat maps. The agent estimates that she spent 75 hours on these tasks for Ford County. When she was done she sent the corrected plat maps to Directory Service, whose staff produced a new map. Figure 2 is Directory Service's map for the same township in Ford County.

Rockford Map could tell by looking at Directory Service's product that its plat maps had been used as templates. Some of the names in Rockford Map's maps have bogus middle initials. These initials, if read from the top of the map to the bottom, spell out "Rockford Map Inc." (Read down the column at 2400 E in the map, starting with Glenn R. Polson.) Rockford Map put these trap initials in the maps of four townships in Ford County. Directory Service's maps contained 54 of the 56 trap initials.

Both Rockford Map and Directory Service sell advertising space in their books of plat maps. But Rockford Map also sells

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. This is apparently a routine practice at Directory Service. An internal manual says that "[t]he first step in the plat process is to update all of the land ownership information in the county. The best way to accomplish this is to obtain a plat map from another source that we can use as a 'base' and then have someone in the county update that information using current public records. Plat books can usually be purchased from a variety of sources, including other private publishers or the county auditor's office. Once a plat book is obtained, D.S.C. will enlarge the township maps to our normal correction map size so that changes and information needed can be more easily written directly on the map."

the books, while Directory Service gives the maps away as part of a directory of residents. Understandably distressed by Directory Service's methods, if not by the fact of competition, Rockford Map filed this suit, contending that Directory Service violated the copyright laws. The district court held a two-day trial and entered judgment for Rockford Map. It ordered Directory Service to turn its working materials and maps over to the court, and it enjoined further publication of infringing maps. The court awarded statutory damages of $250 and attorneys' fees of about $22,000. Its decision also controls numerous other cases between these parties concerning publications in other counties, cases held in abeyance pending the result of this litigation.

■ Directory Service's principal argument on appeal is that Rockford Map's plat maps are not copyrightable. But 17 U.S.C. § 103(a) provides that "compilations" are copyrightable, subject to the limitation in § 103(b) that the copyright in a compilation "extends only to the material contributed by the author of such work, as distinguished from any preexisting material employed in such work." (This is the 1976 Act; the 1909 version is not materially different.) In other words, when the contribution lies in the arrangement of facts, only the arrangement is protected by the copyright. Rockford Map could not copyright the information in the deeds on file in the county courthouse, but it could and did copyright the arrangement of that information on a plat map.

■ The copyright laws are designed to give people incentives to produce new works. See *Harper & Row, Publishers, Inc. v. Nation Enterprises,* — U.S. —, 105 S.Ct. 2218, 2223–24, 85 L.Ed.2d 588 (1985); *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 104 S.Ct. 774, 782, 807, 78 L.Ed.2d 574 (1984). They allow people to collect the reward for their contributions. If the incremental contribution is small, so too is the reward, but a subjective

assessment of the importance of the contribution has nothing to do with the existence of copyright.

Directory Service maintains that Rockford Map produced its plat maps with so little effort that the result may not be copyrighted. The court remarked in *Schroeder v. William Morrow & Co.,* 566 F.2d 3, 5 (7th Cir.1977), that "only 'industrious collection,' not originality in the sense of novelty, is required." The expenditure of 14 hours to update the maps of Ford County, or even 45 to start from scratch, is not very "industrious," Directory Service tells us.

■ The copyright laws protect the work, not the amount of effort expended. A person who produces a short new work or makes a small improvement in a few hours gets a copyright for that contribution fully as effective as that on a novel written as a life's work. Perhaps the smaller the effort the smaller the contribution; if so, the copyright simply bestows fewer rights. Others can expend the same effort to the same end. Copyright covers, after all, only the incremental contribution and not the underlying information. *Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed.2d 630 (1954).

■ The input of time is irrelevant. A photograph may be copyrighted, although it is the work of an instant and its significance may be accidental. *Burrow-Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349 (1884); *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903); *Time, Inc. v. Bernard Geis Assoc.,* 293 F.Supp. 130 (S.D.N.Y.1968) (Zapruder film of Kennedy assassination). In 14 hours Mozart could write a piano concerto, J.S. Bach a cantata, or Dickens a week's installment of *Bleak House.* The Laffer Curve, an economic graph prominent in political debates, appeared on the back of a napkin after dinner, the work of a minute. All of these are copyrightable.[2] Dickens did not

---

**2.** In principle. Mozart's work is in the public domain and anyway was work for hire. The

Archbishop of Salzburg probably held the rights. There were no copyright laws in seven-

need to complete *Bleak House* before receiving a copyright; every chapter—indeed every sentence—could be protected standing alone. Rockford Map updates and republishes maps on more than 140 counties every year. If it put out one large book with every map, even Directory Service would concede that the book was based on a great deal of "industry." Rockford Map, like Dickens, loses none of its rights by publishing copyrightable matter in smaller units.

The contribution of a collection of facts lies in their presentation, not in the facts themselves. The collector may change the form of information and so make it more accessible, or he may change the organization and so make the data more understandable. A catalog of names and addresses is copyrightable (*Schroeder*), as is a directory of trade symbols (*Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 Fed. 932 (S.D.N.Y.1921) (L. Hand, J.), *aff'd*, 281 Fed. 83 (2d Cir.), *cert. denied*, 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074 (1922)) and a compilation of logarithms (*Edwards & Deutsch Lithographing Co. v. Boorman*, 15 F.2d 35 (7th Cir.1926)). In each case the copyright depended on the fact that the compiler made a contribution—a new arrangement or presentation of facts—and not on the amount of time the work consumed.

Here Rockford Map made a contribution. Its employees dug through the records and turned the metes and bounds of the legal descriptions into a pictorial presentation. Teasing pictures from the debris left by conveyancers is a substantial change in the form of the information. The result is copyrightable, no matter how quickly Rockford Map's staff could do the work. See Robert A. Gorman, *Copyright Protection for the Collection and Repre-*

sentation of Facts, 76 Harv.L.Rev. 1569, 1573–76 (1963).

The remaining arguments carry little force. Directory Service tells us that it did not infringe because its agent, too, was industrious. This is irrelevant. The infringement comes from the fact that Directory Service copied Rockford Map's output, not from the fact that it ended with a different plat map. Directory Service may make all the plat maps it wants; everyone is free to repeat the facts contained in the deeds. But it may not use Rockford Map's work as the template. All Rockford Map's copyright covered was the arrangement and presentation of the information, the translation from dusty books of legal jargon to a picture. It was exactly this contribution that Directory Service borrowed.

All concede, as Learned Hand said in *Jewelers' Circular, supra*, 274 F. at 935, that "a second compiler may check back his independent work upon the original compilation." The right to "check back" does not imply a right to start with the copyrighted work. Everyone must do the same basic work, the same "industrious collection." "A subsequent compiler is bound to set about doing for himself what the first compiler has done." *Kelly v. Morris*, [1866] 1 Eq. 697, 701 (Wood, V.C.). The second compiler must assemble the material as if there had never been a first compilation; only then may the second compiler use the first as a check on error.[3] Here, as in *Schroeder*, the second compiler started with the selection, ordering, and arrangement of the first. The district court found that Directory Service "did not make an independent production. To the contrary, it merely took the copyrighted RMP information and edited it." That Di-

teenth-century Germany, and Bach had no way to protect his rights. Dickens was at the mercy of his publishers. Only Laffer's napkin, and not the idea represented by the graph, may be copyrighted. But the principle's the thing.

**3.** The copyright on the 1948 maps of Ford County was not renewed, so these plat maps are in the public domain. Directory Service therefore could have started with the 1948 maps. It did not. The subsequent maps are "derivative works," and the arrangement of information in them was copyrightable under § 103(b) to the extent it was not in the 1948 maps. Most of the arrangement in the 1983 versions post-dates 1948.

rectory Service made some changes is irrelevant; the starting point itself offended.

The district court awarded attorneys' fees and costs of about $22,000, the amount Rockford Map actually paid its lawyers. Directory Service points out that Rockford Map recovered only $250 in statutory damages. This is hardly a good measure of the stakes of the litigation, however. Rockford Map received an injunction halting the distribution of the infringing works. This decision affects the whole of Rockford Map's business, including disputes between these two parties concerning other counties. Viewed from this perspective, $22,000 is quite a modest fee. See *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir.1983). The award of fees in copyright cases rests in the discretion of the district court, *Toksvig v. Bruce Pub. Co.*, 181 F.2d 664 (7th Cir.1950), a discretion not abused here. Rockford Map also is entitled to fees for work done in this court. It has 15 days to file an appropriate statement with the clerk.

AFFIRMED.

Figure 1

## Figure 2

© 1983 DIRECTORY SERVICE CO.