GOTHAM MUSIC SERVICE, INC., et al., Respondents, *v.*
DENTON AND HASKINS MUSIC PUBLISHING CO., INC.,
Appellant.

(Argued March 29, 1932; decided April 26, 1932.)

*Abner Greenberg* for appellant. The State courts have no jurisdiction over an action to protect exclusive rights in a copyrighted publication. (*Underhill* v. *Schenck*, 238 N. Y. 7; *Palmer* v. *De Witt*, 47 N. Y. 532; *Jewelers' Mercantile Agency* v. *Jewelers' Weekly Pub. Co.*, 155 N. Y. 254; *Harper* v. *Klaw*, 232 Fed. Rep. 609.) Only the title of an original and copyrighted work can be protected. (*Osgood* v. *Allen*, 1 Holmes, 185; *Underhill* v. *Scheneck*, 238 N. Y. 7; *Merriam* v. *Syndicate Pub. Co.*, 237 U. S. 622; *Cheney Bros.* v. *Doris Silk Corp.*, 35 Fed. Rep. [2d] 279; *Black* v. *Ehrich*, 44 Fed. Rep. 793; *Bamforth* v. *Douglas Post Card & Machine Co.*, 158 Fed. Rep. 355; *Kipling* v. *Putnam*, 120 Fed. Rep. 631; *Kipling* v. *Fenno*, 106 Fed. Rep. 692.) There is no question of unfair competition as the plaintiffs have no exclusive right to the production and sale of the work sued on. (*White Studio* v. *Dreyfoos*, 221 N. Y. 46; *International Film Service* v. *Associated Producers*, 273 Fed. Rep. 585; *Underhill* v. *Schenck*, 238 N. Y. 7; *Glaser* v. *St. Elmo*, 175 Fed. Rep. 276; *Munro* v. *Tousey*, 129 N. Y. 38; *Crowell Pub. Co.* v. *Italian Printing Co.*, 28 Fed. Rep. [2d] 613; *Wilcox* v. *Singer Machine Co.*, 14 Daly, 116; 118 N. Y. 677; *Diamond Expansion Bolt Co.* v. *U. S. Expansion Bolt Co.*, 177 App. Div. 564.) Plaintiffs by permitting a general publication of the work prior to copyright protection lost all individual rights therein and the work became *publici juris*. (*Wheaton* v. *Peters*, 8 Pet. [U. S.] 591; *Werckmeister* v. *American Lithograph Co.*, 134 Fed. Rep. 321.)

*Samuel Jesse Buzzell* for respondents. Where, through the efforts and expenditures of the plaintiffs, a title has acquired a secondary meaning in the identification of the plaintiffs' musical composition, and the same has become

associated with the good will of the plaintiffs' business, the courts will grant injunctive relief and compel the defendant to account. (*Klaw* v. *General Film Co.*, 154 N. Y. Supp. 988; 171 App. Div. 945; *Aronson* v. *Fleckenstein*, 28 Fed. Rep. 75; *Hall* v. *Broadway Bazaar*, 194 N. Y. 435; *White Studio* v. *Dreyfoos*, 221 N. Y. 46; *Fisher* v. *Star Pub. Co.*, 231 N. Y. 414; *Ramer Reviews, Inc.*, v. *Service Bulletin, Inc.*, 16 T. M. R. 295; *Monroe* v. *Tousey*, 129 N. Y. 38; *Mark Realty Corp.* v. *Hearst*, 180 App. Div. 549; *Ralston Purino Co.* v. *Sunnywax Paper Co.*, 26 Fed. Rep. [2d] 941; *German American Button Co.* v. *Heymsfeld, Inc.*, 170 App. Div. 416; *Burrow* v. *Marceau*, 124 App. Div. 665; *Vulcan* v. *Meyers*, 139 N. Y. 364; *Chappel* v. *Sheard*, 2 K. & J. Rep. 117; *Chappell* v. *Davidson*, 2 K. & J. Rep. 123; *Art Metal Works* v. *Cunningham Products Corp.*, 137 Misc. Rep. 429.) The title "St. James' Infirmary," the name of plaintiffs' musical composition, is an arbitrary and fanciful one, and not descriptive, and is susceptible of exclusive appropriation. (*Frohman* v. *Morris, Inc.*, 123 N. Y. Supp. 1090.)

POUND, Ch. J. Some years ago, as far back as 1925, a song called "Gambler's Blues" was sung and played throughout the country. It was a melancholy ballad purporting to have been sung by a gambler in a barroom after he had seen his sweetheart lying dead in the infirmary. It was not a copyrighted publication. Both song and melody became *publici juris* or of public right. Any one was free to produce them.

In March, 1929, the plaintiffs revived the old song under the title "St. James' Infirmary." The infirmary heretofore unidentified was given a name. They put forward an advertising and publicity campaign to sell the old composition under the new name. They made the song popular. In or about March, 1930, the defendant, a rival music publishing house, put on the market the same song and melody under the title "St. James'

Infirmary or Gambler's Blues." Its nominal purpose was to link both titles under one name so that a customer who called for either might be supplied. The defendant has been restrained from using the title " St. James' Infirmary " or any simulation or imitation thereof as the title of a (i. e., any) musical composition and judgment for damages has been entered against it.

Infringement of copyright is not involved. Respondents' brief so states and the complaint contains no claim that copyright property has been misappropriated. If such were the grievance, the remedy would be in the Federal courts. (*Underhill* v. *Schenck*, 238 N. Y. 7.) Plaintiffs have no property in the name " St. James' Infirmary." The name describes the song and, generally speaking, any one may use it to describe the same song. (*Black* v. *Ehrich*, 44 Fed. Rep. 793; *Atlas Mfg. Co.* v. *Street & Smith*, 204 Fed. Rep. 398, 404; *Merriam Co.* v. *Syndicate Pub. Co.*, 237 U. S. 618.) The plaintiffs must establish that defendant's acts amount to an unlawful abuse of competition by creating a reasonable likelihood of deception; that persons who desire the song and melody because plaintiffs have made them popular may be misled by defendant into thinking that they are purchasing the plaintiffs' version of the song. This they have wholly failed to accomplish.

Defendant is not deceiving the public. The song is popular, not because plaintiffs publish it, but because they have advertised it and thus made it known to the public. Their names are not identified with the new name. The demand is for the song and not for the publisher.

In *Fisher* v. *Star Co.* (231 N. Y. 414, 433) the equitable power of the court was invoked to restrain the use by others than Bud Fisher, the plaintiff, of the well-known " Mutt and Jeff " newspaper cartoons or humorous strips to which he had by his skill given a financial value although he had not at first protected them by copy-

right. The court held that "no person should be permitted to pass off as his own the thoughts and works of another." (*White Studio, Inc.*, v. *Dreyfoos*, 221 N. Y. 46.) Fisher was so identified in the mind of the public as the creator of "Mutt and Jeff" that it would be unfair to him to permit others to put out their drawings of "Mutt and Jeff" in competition with his own drawings.

The situation here is quite different. A name which is descriptive of one song may not be attached by a competitor to another when the duplication will mislead the public into the belief that the two songs are alike, but the name, so far as it is a symbol descriptive of the old song, is not protected unless it is identified with the source or origin of production. (*Underhill* v. *Schenck, supra.*) Here it is sought to protect the title because plaintiffs invented it but no question of imitation or deception or mistake arises. No unlawful competition in trade is shown, nor breach of contract or trust. In the absence of the use of the name in such a way as to create a likelihood that people will be misled, the name is *publici juris* and may be used by all.

The judgment of the Appellate Division should be reversed and the complaint dismissed, with costs in all courts.

CRANE, J. (dissenting). I view this case somewhat differently from the chief judge. True, the song, called "Gambler's Blues" became *publici juris*, and any one was free to use it, print copies of it, and sell it on the market. No one had or could have a restricted right to sell the song. Also, the name, the original name, "Gambler's Blues," followed the song, and any one could use this name in reproducing it. The plaintiffs, however, did more than this to make the song valuable. No one wanted it; it had passed out of use, had ceased to be popular; there was no demand for it. The plaintiffs made changes in tempo of the music, added a few verses

and gave it a new name, " St. James Infirmary," and then started an advertising campaign, spending thousands of dollars in making the name, " St. James Infirmary," known to the public. Under this name the plaintiffs advertised extensively throughout the country their rearrangement of this old song.

Now comes the defendant and seeks to reap the harvest of this advertising. It publishes the old song and gives it the name which the plaintiffs have made popular, namely, " St. James Infirmary." If they had called it by its original name, " Gambler's Blues," no one could complain and no rights would have been violated. This would not do; the defendant must reap the profits which legitimately should go to the plaintiffs as the result of their expenditures for advertising, and so the defendant takes " St. James Infirmary " for no other reason than to gain the reward of others' work.

Within the principle of all the cases, this is unfair competition. I know of no reason why a name or a trade may not be built up for a song or bit of literature as well as for any commodity. When one buys Uneeda biscuits or Cremo cigars or talcum powder, no one has in mind the manufacturer; this legal phraseology is a mere fiction. The producer may change its corporate existence innumerable times and the public does not know or care. What they do know is that an ordinary bit of merchandise has, through advertising, become very popular, and they want the merchandise with that name. It is the name that counts and has been made a valuable asset. So with this old song which nobody wanted; a revised edition was given a new name; the name, through advertising, became popular, created the demand, and the sale of the song under this new name brought in much profit to the plaintiffs, until the defendant diverted it by making unfair use of the name. The whole secret of advertising is to make a name popular; a slogan sells goods when many times their intrinsic value would create

no demand. I find support for these views in *Fisher* v. *Star Co.* (231 N. Y. 414, 427, 428), where we said regarding the names " Mutt " and " Jeff ": " The controlling question in all cases where the equitable power of the courts is invoked is, whether the acts complained of are fair or unfair. * * * Any civil right not unlawful in itself nor against public policy, that has acquired a pecuniary value, becomes a property right that is entitled to protection as such."

" Unfair trade," said Mr. Justice HOLMES, in *International News Service* v. *Associated Press* (248 U. S. 215, 246), " means that the words are repeated by a competitor in business in such a way as to convey a misrepresentation that materially injures the person who first used them, by appropriating credit of some kind which the first user has earned."

" If a copyright does not exist, or, once existing, has been lost, the name is lost too, in so far as it is merely a symbol descriptive of the copyrighted thing." (*Underhill* v. *Schenck*, 238 N. Y. 7, 20.) Thus, the old name, " Gambler's Blues," is as free for use in connection with the old song as the song itself. This does not mean, however, that an established trade may not be built up for an arrangement under a new name which will prevent unfair competition by use of the same name and arrangement, even though no copyrights exist.

" The principles which interdict unfair competition in trade will protect a publisher who has imparted to his books peculiar characteristics, which enable the public to distinguish them from books published by others and containing the same literary matter, against the copying of the characteristics, though the copyright on the literary matter has expired." (*Merriam Co.* v. *Straus*, 136 Fed. Rep. 477; *Merriam Co.* v. *Saalfield Pub. Co.*, 238 Fed. Rep. 1, cited in *Fisher* v. *Star Co.*, 231 N. Y. 414, 431.)

Here the copyright on the song had expired, but this

did not prevent the plaintiffs from having a right to their rearrangement and the new name which they had given it, especially when through much expenditure of money they had built up a demand for the song under that name.

The full and complete answer to the plea of the defendant is to go out and sell the original song under its old name and see how far it gets with it. When the defendant refuses to do this, it is evident that it wants the benefits coming from the plaintiffs' new arrangement and new name, which they have given the song. This is not fair.

The judgment should be affirmed.

LEHMAN, O'BRIEN and CROUCH, JJ., concur with POUND, Ch. J.; CRANE, J., dissents in opinion in which HUBBS, J., concurs; KELLOGG, J., not sitting.

Judgment reversed, etc. (See 259 N. Y. 629.)