## DAVIES v. BOWES.

(District Court, S. D. New York. November 17, 1913.)

1. COPYRIGHTS (§ 47*)—INFRINGEMENT—ASSIGNMENT.

Where complainant wrote a short story which was published in a copyrighted newspaper, after which the publishers assigned their rights under the copyright to complainant, his rights were limited to those of his assignors.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 45; Dec. Dig. § 47.*]

2. COPYRIGHTS (§ 2*)—INFRINGEMENT—WHAT LAW GOVERNS.

Where a copyrighted newspaper published a short fiction story, its rights against an alleged infringer were measured by the statute in force at the time of publication.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 1; Dec. Dig. § 2.*]

3. COPYRIGHTS (§ 51*)—INFRINGEMENT—CAUSE OF ACTION—ELEMENTS.

Rev. St. § 4952, as amended in 1891 (U. S. Comp. St. 1901, p. 3406), provides that the author or proprietor of any book shall have the sole liberty' of printing, copying, and vending the same, and that authors or their assigns shall have the exclusive right to dramatize their works for which copyrights have been obtained. *Held* that, in order to obtain relief for alleged infringement of a copyrighted publication, the burden is on complainant to show that the copyright exists and that copying has taken place.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 51.*]

4. COPYRIGHTS (§ 75*)—INFRINGEMENT—EXISTENCE OF COPYRIGHT TO FICTION PRINTED AS NEWS.

Where complainant, a newspaper reporter, wrote and had printed in a copyrighted newspaper an alleged report of an incident as news which was in fact pure fiction, it was not covered by the copyright of the newspaper so as to entitle complainant, after having obtained an assignment of the publisher's rights under the copyright, to restrain the subsequent use of the purported facts stated therein as part of the basis of a dramatization.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 65; Dec. Dig. § 75.*]

In Equity. Suit by Acton Davies against Edward J. Bowes for infringement of a copyright. On final hearing. Bill dismissed.

For purposes of argument, the following assumptions of fact are made: They are in accord with the contentions of complainant and are therefore most favorable to him. If, however, decision were put upon other points, some further investigation of the facts would be necessary.

In June, 1908, Davies was in the employment of a newspaper, the Evening Sun. It was his especial duty to provide theatrical news and criticism; he also wrote short stories. At the time mentioned, he wrote, and the Sun published under the caption "News of the Theaters," something which began as follows: "A Massachusetts real life drama which eclipses the plot of 'The Thief.'" The drama in question begins thus: "Two men who had missed their connection with a Boston train last Tuesday morning found themselves in a little interior Massachusetts town with four hours to be killed." Then is told how they observed the drama during the said four hours, and found the same by sitting in the courthouse of the village, where was put on trial a woman accused of theft, and who, it appeared, had actually stolen for the purpose of providing luxuries, and perhaps comforts, for the child to which she soon expected to give birth. She admitted the larceny, whereupon her husband asserted himself to be the thief, and she repudiated his assertion, dramatically exclaiming (in substance) that the father of her child was lying to save her. Before the result of this court episode could be known, the travelers first mentioned were obliged to leave and catch their train. The episode is related almost wholly in the third person, though the language of the woman in asserting her own guilt and her husband's innocence is put in the first.

The edition of the Evening Sun containing this publication was copyrighted, and in course of time, by a train of circumstances unnecessary to recite, attracted the attention of one Kenyon, who says that he supposed it to be a journalistic statement of an actual occurrence. Davies' name appeared at the foot of the column headed "News of the Theaters" in the New York Sun, and

Davies himself says that the tale was not true; that he regarded it as a short story, which he had cast in the form of an actual occurrence because he thought it more striking. Kenyon testifies that out of this tale in the Sun and much other and more important material, plus his own imaginings, he constructed a play called "Kindling." Defendant is a producer of that play, and in this suit Davies considers himself aggrieved because, having received an assignment of the copyright privileges of the Evening Sun, he accuses Kenyon of unlawful use of the above referred to product of Davies' imagination. For the purposes of this decision (only) it is found as a fact that "Kindling" contains a substantial part of the plot of Davies' story, if it be regarded as a story in the sense of fiction.

Mr. Treadwell, for complainant.
Mr. Rosenheim, for defendant.

HOUGH, District Judge (after stating the facts as above). Complainant's contention is that this case is on all fours with Dam v. Kirke La Shelle Co., 175 Fed. 902, 99 C. C. A. 392, 41 L. R. A. (N. S.) 1002, 20 Ann. Cas. 1173. This may be so if (and only if) the Evening Sun obtained the protection of copyright in the matter written by Davies.

[1] The rights of this complainant are, of course, to be measured by those of his assignor.

[2] The rights of the Sun must depend upon the language of the statute in force at the time of publication, viz., Rev. St. 4952, as amended in 1891 (U. S. Comp. St. 1901, p. 3406).

[3] Of the act referred to, the words applicable to this litigation are as follows:

"The author * * * or proprietor of any book * * * shall have the sole liberty of printing * * * copying * * * and vending the same. * * * Authors or their assigns shall have the exclusive right to dramatize * * * their works for which copyright shall have been obtained."

It follows that there are two prerequisites to relief. One is that a copyright shall exist, and the other is that a copying shall have taken place.

[4] Decision in this case is put upon a single narrow ground—not because other grounds could not be found, but because the point to be stated depends upon a rule of morals.

There never was any copyright in this alleged episode of trial, because it was printed as news; it was presented to the public as matter of fact and not of fiction; the readers of the Sun were invited to believe it, and Davies substantially admits that he wrote it in the form he did in order to induce belief.

How much belief is to be accorded to newspaper stories is matter of opinion; but it is a matter of morals that he who puts forth a thing as verity shall not be heard to allege for profit that it is fiction.

The statute is infringed only by "copying" that which is "copyrighted." The essence of copying is *literary* piracy, viz., the appropriation of an author's intellectual labors.

The fact that something has been printed is not of primary importance, and neither is the embodiment of labor in what is commonly called a "book." The inquiry always is as to the literary form. Of course, a statement of fact may be protected by copyright against any

piracy of the form of statement, because such form may, and often does, display literary effort of merit. But there can be no piracy of the facts, because facts are public property.

Nor does it change the result that the facts are stated in dramatic form. It is conceivable that the actual dialogue of a courtroom would be attractive on the stage, but the reporter of said dialogue could never obtain copyright thereupon.

All that was ever copyrighted regarding this tale was the form of telling, the sequence and choice of words and arrangement of sentences coined by the plaintiff, who pretended to be a reporter and not a fiction writer. But the words of the actors in the alleged "Massachusetts real life drama" have not been appropriated or copied by Kenyon nor used by the defendant.

The point above made as to the impossibility of copyrighting news has been recognized in Tribune Co. v. Associated Press (C. C.) 116 Fed. 126, and cases cited, and a fair summary of the law on this head is, I think, contained in Bowker on Copyright; pp. 88, 89. If therefore the tale in question were admittedly news, there would be ample authority for this decision; since it only pretended to be news, the proposition is more novel. But in my judgment the reasoning of Wright v. Tullis, 1 C. B. 873, is applicable. There a publisher pretended that a copyrighted work was a translation from a well-known foreign writer. It was, on the contrary, an original product by a native. It was held, and I think rightly held, that such pretense vitiated the copyright. The pretense here was for the purpose of attracting attention and lending interest to an alleged occurrence which if told as fiction would have been tawdry and unconvincing. The man who used the episode swears that he thought it at least as true as most journalistic news items; and I may add that I remained under the same impression until the argument of counsel enlightened me.

The bill is dismissed, with costs.