### MANNERS v. TRIANGLE FILM CORP. et al.

(Circuit Court of Appeals, Second Circuit.   November 13, 1917.)

#### No. 104.

1. TRADE-MARKS AND TRADE-NAMES ⬤=95(2)—UNFAIR COMPETITION—TITLE TO PLAY.

To give the author and owner of a spoken play the right to enjoin the use by another of the same title for a photoplay, on the ground of unfair competition, aside from any question of property right in the title, it must be shown that he had used it so extensively as to give it a secondary signification.

2. TRADE-MARKS AND TRADE-NAMES ⬤=95(2)—UNFAIR COMPETITION—RIGHT OF INJUNCTION.

That complainant wrote and had produced at seven matinée performances a one-act play entitled "Happiness" *held* not to give him any

prior right in such title, which entitled him to enjoin its use three years later as the title of a photoplay. Nor did the fact that he later announced his intention to write and produce a three-act play under the same title give him any additional rights.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by J. Hartley Manners against the Triangle Film Corporation and the Rialto Theater Corporation. From an order granting an injunction pendente lite, defendants appeal. Reversed.

For opinion below, see 244 Fed. 293.

Alex. L. Strouse, of Milwaukee, Wis. (Alfred S. Barnard and Walter N. Seligsberg, both of New York City, of counsel), for appellants.

David Gerber, of New York City, for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. This is an appeal from an order granting an injunction pendente lite. May 1, 1917, the suit was brought and the affidavits show that the complainant in 1914 wrote a one-act play called "Happiness," which he presented seven times in all at Friday matinées in the Cort Theater, New York City, in March and April of that year; Laurette Taylor having the chief part. Between May and December, 1915, he announced extensively in the newspapers that he intended to present a three-act play under that title with Laurette Taylor in the leading rôle. His contention is that in this way he has acquired a property in the word "Happiness" as a trade-mark when used in connection with a play.

Between February 3 and 17, 1917, the New York Motion Picture Company manufactured a film at its premises in Los Angeles, Cal., upon a scenario written between January 1 and 17 of that year by C. G. Sullivan, and on March 30 gave the photoplay the title "Happiness," without having any knowledge whatever of the complainant's play. This photoplay was purchased by the defendant Triangle Film Corporation, was advertised to be produced with Edith Bennett in the leading rôle, the first presentation to be at the Rialto Theater in Brooklyn, belonging to the Rialto Theater Corporation. April 27 the complainant notified the manager of the Rialto Theater of his exclusive claim to the title, and April 30 mailed a similar notice to the defendant Triangle Film Corporation, which was received May 1. At this time the defendant Film Corporation had expended $48,295.18 in the purchase of the play and about $4,000 in advertising. The first performance was given May 29, and by June 18, when the injunction was granted, the photoplay had been widely exhibited throughout the United States.

The dispute is solely as to the title of the play. There is no similarity whatever between the defendant's film and the complainant's one-act sketch in respect to the subject-matter, and there is no evidence that the defendant Film Corporation is attempting to make the public believe that its photoplay is the same as the complainant's. The contest being as to the rights of the parties respectively, it is of no impor-

tance that the defendant Film Corporation could have changed and can now change the title of its photoplay at small expense. That fact cannot create any right in the complainant which he has not, or impose any duty on the defendants.

[1] There may, of course, be competition between a spoken play and a photoplay as to subject-matter. This was decided in the Kalem Case, 222 U. S. 55, 32 Sup. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285. There may be unfair competition in the appropriation of the same title of a play, quite apart from the consideration of any property right. In that case, however, it would be necessary to show that the claimant had used the title so extensively as to give it a secondary signification. Macmahan Co. v. Denver Co., 113 Fed. 468, 51 C. C. A. 302, and our decision in Crescent Co. v. Kilborn, 247 Fed. 299, —— C. C. A. ——, handed down herewith.

We think on the affidavits in this case the motion for a preliminary injunction should have been denied. Our view is, not that the affidavits show that the complainant had abandoned his rights in the title "Happiness," but that they do not show that he had ever obtained a prior right to or any monopoly in the word because of seven matinée performances of a one-act sketch in New York City in 1914. The word "Happiness," being public property, must, in order to acquire a secondary significance, have been used generally in connection with a play, and so have become known to the public said to be likely to be misled, viz., the public throughout the United States.

[2] The fact that the complainant in 1915, a year later, announced his intention to thereafter produce a three-act play under the same title created no monopoly in the name which did not then exist. He was referring to a play to be composed and produced which he might never write or never produce and which if he did both might be different from the one-act play produced in 1914. His language is merely that of expectation, which cannot create a right against the public. Maxwell v. Hogg, 2 Ch. App. 307; Civil Service Association v. Dean, Law Reports, 13 Ch. Div. 512. The defendant's business ought not to have been interrupted because of an announcement which might never be realized.

The order is reversed.