BECKER v. LOEW'S, Inc.
No. 8073.

Circuit Court of Appeals, Seventh Circuit.
Feb. 20, 1943.

Herbert M. Lautmann, David Levinson, and Ben I. Greenebaum, Jr., all of Chicago, Ill., and Samuel D. Cohen and D. O. Decker, both of New York City, for appellant.

Moses Levitan and Theodore J. Levitan, both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff brought this action for an accounting of profits, an injunction, and damages for alleged violation of §§ 1(a), (b) and 4 of the Copyright Act, 35 Stat. 1075, 17 U.S.C.A. §§ 1(a), 1(b), and 4, and for unfair competition, on the theory that defendant had wrongfully appropriated the title and theme of his book, and had violated plaintiff's exclusive right to dramatize his book. By adopting the Master's report and entering judgment thereon, the District Court found the defendant, Loew's Incorporated, guilty of copyright infringement and of unfair competition. To reverse this judgment, defendant brings this appeal.

In August, 1936, the plaintiff, Harry Becker, wrote and copyrighted a book entitled "We Who Are Young," discussing economic and political problems with particular reference to the Roosevelt-Landon Presidential campaign. It did not have a large sale. Possibly 700 copies of the book were distributed by gift or sale, nearly all of them during 1936, and it was reviewed in some newspapers shortly after its publication. The book compares the doctrines of President Roosevelt as opposed to those of reactionaries and Karl Marx, and shows that the source material was "Das Kapital" by Marx, "Looking Forward" and "On Our Way" by President Roosevelt, Taussig's "Principles of Economics" and Walter Lippmann's "The New Method of Freedom." The book has no plot, no story, no character development, no sequence of incidents, only an abstract, general discussion in essay form. And plaintiff's claim for infringement rests on such general passages as: "We who are young, have seen this strife for property and find it not to our liking. We do not want to struggle ceaselessly to accumulate property to gain an illusory security. We would rather have security without great wealth."

In 1940 the defendant bought, produced, and released a screen play from Dalton Trumbo, describing a love story and the hardships encountered by a young couple. Trumbo, who had no knowledge of plaintiff's book or its contents, wrote the story in 1939, basing it on his own experiences and those of his friends who were attempting to solve the problem of getting married on a small salary. The story by Trumbo was originally entitled "To Own the World," the title of the photoplay was changed to "I Do" and finally, on the suggestion of one Whitbeck, defendant's employee, to "We Who Are Young." Whitbeck testified that he had never heard of plaintiff's book until after he had suggested the title to defendant.

*The story:* Bill, the husband, and Margy, his young wife, worked for the same business firm which had a rule that no married woman might work there. When their marriage was discovered, Margy was dismissed. The furniture company repossessed their household goods after Margy discovered she was going to become a mother. Bill lost his job and could not find another. Finally, however, an acquaintance got a job for him and Bill hurried back to his prior employer's office to get an office survey system which he had developed; on meeting Beamis, his former employer, he angrily told him what he thought of the firm's management. When he returned home, Bill found Margy in agony. After unsuccessfully trying to get

an ambulance, Bill stole a car, bundled Margy into it, and started for the hospital. Policemen stopped him, but on taking in the situation, cleared traffic with their sirens while Bill drove at breakneck speed to the hospital where Margy gave birth to twins. When the car owner withdrew his complaint and Beamis sent Bill a letter asking him to come back to the firm under new conditions, Bill faced a new and brighter future. Plot, story, incident, and character development were used to bring out the romantic theme.

We commence our study of the instant case with the admonition of the court voiced in the case of Eichel v. Marcin, D.C., 241 F. 404, 408: "The object of copyright is to promote science and the useful arts. If an author, by originating a new arrangement and form of expression of certain ideas or conceptions, could withdraw these ideas or conceptions from the stock of materials to be used by other authors, each copyright would narrow the field of thought open for development and exploitation, and science, poetry, narrative, and dramatic fiction and other branches of literature would be hindered by copyright, instead of being promoted. A poem consists of words, expressing conceptions of words or lines of thoughts; but copyright in the poem gives no monopoly in the separate words, or in the ideas, conception, or facts expressed or described by the words. A copyright extends only to the arrangement of the words. A copyright does not give a monopoly in any incident in a play. Other authors have a right to exploit the facts, experiences, field of thought, and general ideas, provided they do not substantially copy a concrete form, in which the circumstances and ideas have been developed, arranged, and put into shape."

Plaintiff contends that defendant's motion picture infringed his copyright. We think his contention is not well founded. The chief similarity between the two works is identity of title, but it is well settled that the copyright of a book or play does not give the copyright owner the exclusive right to the use of the title, Glaser v. St. Elmo, C.C., 175 F. 276, 278; Corbett v. Purdy, C.C., 80 F. 901; Osgood v. Allen, 18 Fed.Cas. No. 10,603, p. 871; see Warner Bros. Pictures v. Majestic Pictures Corp., 2 Cir., 70 F.2d 310, 311; Harper v. Ranous, C.C., 67 F. 904, 905; Patten v. Superior Talking Pictures, D.C., 8 F.Supp. 196, 197;

Nims, Unfair Competition, § 278, p. 748, since it is only a means of description which aids in identifying a literary production; and anyone may use it so long as he does not mislead the public into thinking it is the identical thing which it originally designated. Ott v. Keith Massachusetts Corp., 309 Mass. 185, 34 N.E.2d 683. The protection given by the copyright statute is to the property in the literary composition, not to the title given to it. Corbett v. Purdy, supra. Neither the words nor the particular combination of words "We Who Are Young" are unique. They are not the type of words to be found only in the vocabulary of a Bentham or a Veblen, but are, with minor variations, extremely common and generally used by everyone. They are merely a descriptive phrase in the English language, Oxford Book Co. v. College Entrance Book Co., 2 Cir., 98 F.2d 688. These identical words were used in a report of William W. Hinckley to the Third American Youth Congress, entitled "Youth Seeks Peace—Freedom and Progress," published shortly before plaintiff's book. Shakespeare used substantially similar words, "we that are young," in the closing lines of "King Lear." Similar words taken from the context of a copyrighted book for its title have not been protected by the copyright when used as a title for a motion picture. Collins v. Metro-Goldwyn Pictures Corp., D.C., 25 F.Supp. 781.

Plaintiff next contends that defendant has appropriated "original thoughts and ideas," "central themes," and "material portions" of his book. We have read the book and viewed the motion picture. A comparison of the two works reveals that no such wrongful appropriation occurred. Youth's struggle for security and freedom from want is by no stretch of the imagination an original idea. The subject of plaintiff's book is a wholly different composition from the story upon which defendant's cinematograph story is based, and nothing even remotely resembling the plaintiff's book can be found in it, except the idea that it is difficult to live on a small salary and that the difficulty increases when one is out of work. But this is common knowledge which lies in the public domain, and no monopoly of such theme has been granted to plaintiff. The purpose of copyright, to promote literary progress, would be frustrated if an author could prevent others from using such common ideas.

■■ The law does not confer any exclusive property right in such a trite theme as a young couple's struggle against adversity, and another author is legally privileged to utilize the "theme" of a work so long as the mode of expression is not plagiarized, Sheldon v. Metro-Goldwyn, etc., Corp., 2 Cir., 81 F.2d 49, 54. But plaintiff's position is even less secure, since his book is not a development of such a theme. In his own words, it is "a discourse and discussion of economic and social problems of the present day." Plaintiff has not even shown how his abstract discussion amounts to a "theme" and any similarity is so abstract that the theme is common property and remains in the public domain with the result that no copyright protects it. Shipman v. R.K.O. Radio Pictures, 2 Cir., 100 F.2d 533. And since the statute can be infringed only by copying the copyrighted material, that is, engaging in *literary* piracy, Davies v. Bowes, D.C., 209 F. 53; Id., 2 Cir., 219 F. 178, and no copying or identity of expression is charged, it is difficult to understand how plaintiff can assert that the movie appropriated "material portions" of his book when he concedes that none of the scenes or dialogue were plagiarized from his book.

■ Two tests have been used by the courts to determine whether infringement has occurred, namely, did defendant actually use the plaintiff's work, and if so, was there such similarity between the two works as to constitute an unfair use? Here the evidence showed no use whatever of plaintiff's book by Dalton Trumbo or any agent of defendant and a comparison of the two works disproves access or copying. Moreover, the Master found that the title was attached to the story of the motion picture only *after* it was fully written.

■ If we compare the two works, we find contrasts rather than similarities, and the resemblances, if any, between the subject matter of plaintiff's book and the picture are not important. Plaintiff's book has no plot, while the motion picture is built on a plot which supplies much of the merit of the play. Plaintiff's book is written in essay form. The talking picture necessarily uses dialogue. Plaintiff's book has no sequence of incidents. The talking picture progresses from incident to incident in spinning out the story. Plaintiff's book deals with abstract economic ideas, whereas defendant's picture presents a romantic love story. Plaintiff's book has no characters, while the movie shows warmly human characters who have distinctive individual traits, humorous or otherwise. In Nichols v. Universal Pictures Corp., 2 Cir., 45 F.2d 119, 120, an action was brought for infringement of copyright of plaintiff's play "Abie's Irish Rose" by the motion picture "The Cohens and The Kellys." The infringement claim was not allowed in spite of similarity of incidents and characters, because the subject matter was not a proper copyrightable monopoly for the reason that "the theme was too generalized an abstraction from what she [plaintiff] wrote. It was only a part of her 'ideas.'" Likewise, the characters could not be monopolized, and the court held that the less developed the characters, the less they could be copyrighted. A fortiori, where, as in the instant case, the subject matter is completely abstract and where there are no characters, it seems to us that plaintiff has no valid claim of infringement. Moreover, even if we should assume that the two works express youth's viewpoint (which seems the only possible similarity), there is still no infringement, because a person may take the same idea as that of another literary effort, if in treating it, the incidents by which it is developed are substantially different and the idea is worked out on substantially different lines so that the two works bear no real resemblance to each other. Echevarria v. Warner Bros. Pictures, D.C., 12 F.Supp. 632, 635; Seltzer v. Sunbrock, D.C., 22 F.Supp. 621, 627; Eichel v. Marcin, D.C., 241 F. 404.

In many cases where the same general theme was used and the similarities between the two works have been far greater than in the two works in our case, no infringement has been found. Gropper v. Warner Bros. Pictures, D.C., 38 F.Supp. 329; Bein v. Warner Bros. Pictures, 2 Cir., 105 F.2d 969; Roe-Lawton v. Hal E. Roach Studios, D.C., 18 F.2d 126. Nor do the authorities which plaintiff urges upon us support his claim of infringement. Dam v. Kirk La Shelle Co., 2 Cir., 175 F. 902, 41 L.R.A.,N.S., 1002, 20 Ann.Cas. 1173, merely holds that a plot may not be stolen without infringement. Here plaintiff's book has no plot. In Chappell & Company, Limited v. Fields, 2 Cir., 210 F. 864, defendant's play, which was found to infringe plaintiff's play, had substantially the same dramatic incidents. Here plaintiff's book has no incidents. In Kalem Company v. Harper

Bros., 222 U.S. 55, 32 S.Ct. 20, 56 L.Ed. 92, Ann.Cas.1913A, 1285, the motion picture infringed the novel "Ben Hur," but the picture reproduced the book as closely as possible, following its plot, characters and dialogue. Here plaintiff's book could not be dramatized without being rewritten so thoroughly as to make it another book.

Plaintiff's contention that defendant has engaged in unfair competition is also without merit. Although the term "unfair competition" eludes precise definition, certainly its opposite "is doing business in such manner as not to deceive the public." Defendant's photoplay was so different from plaintiff's book in subject matter that no reasonable person could think it was simply a dramatized version of the book. In its present form, only a small fragment, if any, of the book could be photographed. And the exclusive right to "dramatize" it, which plaintiff protests was violated, would entail a complete re-writing, even to put it into form for a storyless newsreel or feature. Moreover, defendant avoided confusing the two works by stating on the film of its motion picture and in most of its advertising that it was an original screen play by Dalton Trumbo.

Plaintiff rests his claim of unfair competition largely on the appropriation of his book's title. To be protected, however, a title must have attained a secondary significance, so that mention of the title would lead another person to think of the book. The name of plaintiff's book had not acquired and retained this secondary meaning at the time the defendant's picture was released. A span of nearly four years intervened between the publication of the book in 1936 and the first showing of defendant's photoplay in 1940; during this time many people who had seen plaintiff's book on exhibition in a bookstore window or had read a review of it in a newspaper would have forgotten it. Since the overwhelming majority of the total number of copies of plaintiff's book which were distributed were disposed of in 1936, only a few being sold in 1937, after which time sales virtually ceased, it is not unlikely that many persons who had acquired the book had no such fresh recollection of it as to connect it with a movie title which appeared four years later. Moreover, the book had only a very limited distribution, probably fewer than 700 copies in all. Even in instances where a book was cur-

rently being sold and had sales of 10,000 copies plus favorable reviews in metropolitan newspapers having a circulation running into millions, an injunction restraining the use of an identical title for a motion picture has been denied. Collins v. Metro-Goldwyn, etc., Corp., D.C., 25 F. Supp. 781. A title must attain a secondary significance before any property rights in it can be protected, Manners v. Triangle Film Corp., 2 Cir., 247 F. 301; cf. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73; and American Fork, etc., Co. v. Stampit Corp., 6 Cir., 125 F.2d 472, 475, and anyone may use a title, if there is no secondary significance, since the mere use of a substantially similar title, if not used in such a manner as to induce the public to believe that the work to which it is applied is the identical thing which it originally designated, does not constitute unfair competition. Atlas Manufacturing Company v. Street & Smith, 8 Cir., 204 F. 398, 47 L.R.A.,N.S., 1002; Lare v. Harper Brothers, 86 F. 481, 103 F. 203; Black v. Ehrich, C.C., 44 F. 793.

If there is no substantial similarity of subject matter, it is hard to see how there can be unfair competition between the two works. An abstract economic discussion may be analogized to a song as far as similarity to a motion picture is concerned. Where a plaintiff sued because of the alleged unfair competition of defendant's motion picture entitled "The Man Who Broke The Bank At Monte Carlo" with its song of the same title, the court said: " * * * The member of the public who is supposed to be deceived must, to start with, be assumed to know what he is wanting to see or hear. Thus in the present case he must be presumed to know that what he wanted was to hear the song 'The Man Who Broke The Bank At Monte Carlo.' It seems inconceivable that when or if he bought a ticket for the motion picture, he imagined he was going to hear a performance of the familiar song. The two things are completely different, and incapable of comparison in any reasonable sense. The thing said to be passed off must resemble the thing for which it is passed off. A frying pan cannot be passed off as a kettle." Francis Day & Hunter, Ltd. v. Twentieth Century Fox Corp., Ltd., 56 Times Law Reports 9. Since we can see no grounds for confusion of plaintiff's general economic discussion with defendant's romantic love story, we conclude that there was no unfair competition.

Although we agree that the findings and conclusions of the Master adopted by the District Court should not be disturbed unless there is most cogent evidence of mistake and miscarriage of justice or error in applying the law, yet where the ultimate finding is a conclusion of law or at least a determination of a mixed question of law and .fact, as it is in this case, it is subject to judicial review, and our duty is not to place a perfunctory stamp of approval upon the work of the District Court, but rather to provide a real review. This we have done, and have concluded there has been no infringement and no unfair competition.

Accordingly, the judgment of the District Court is reversed.