Nicholas M. Pette, J.
Plaintiff in this action moves for an order, enjoining and restraining the defendants, pendente lite, from further publishing, selling and distributing their book entitled, “ The Green Kingdom ”.
The plaintiff in his complaint alleges, inter alia, that prior to 1955 he conceived the idea and design to create and publish a book of prose and poetry under the title and to be known as “The Green Kingdom”, and that thereafter, on or about August, 1955, he authored said book entitled “ The Green Kingdom ” containing poetry and prose, which was published by the Bond Wheelright Company, and that he is the only true, sole and lawful owner of the title “The Green Kingdom ”; that thereafter during 1955 and 1956 he expended time, energy and money in a campaign to advertise said book; that in January, 1957, the defendant Simon & Schuster, Inc., published a book written by the defendant, Bachel Maddux, entitled “ The Green Kingdom ”, which is so designed as to constitute *753 simulation of the plaintiff’s book in that it is approximately the same size as plaintiff’s and that the covers of the two books are done in approximately the same colors; and that persons ordering plaintiff’s book by mail and over the telephone have received copies of the defendants’ book so that sales of plaintiff’s book have been greatly injured thereby, and unless defendants are restrained during the pendency of this action from further publishing, selling and distributing their book, plaintiff will suffer great and irreparable damage; and that plaintiff has no adequate remedy at law.
Plaintiff’s allegations have been generally denied, except that defendant Simon & Schuster Inc., admits having published in January, 1957 a book written by Rachel Maddux entitled, “ The Green Kingdom ”, and for an affirmative defense allege that Rachel Maddux conceived a novel entitled “ The Green Kingdom” prior to 1942; that neither she nor Simon & Schuster Inc., knew of plaintiff’s book by that title until the Maddux novel was published; that the two books are wholly dissimilar in content; that Simon & Schuster Inc., has spent large sums of money in publishing and distributing the Maddox book and that consequently, the title “ The Green Kingdom ” has come to be identified in the public mind with the Maddux novel; that plaintiff’s book is out of print, and therefore plaintiff is not entitled to relief.
Plaintiff concedes that he is not the first user of a title containing the words “ Green Kingdom It is undisputed that in 1940, Rowe, Petersen & Company published a book entitled “ Green Kingdom ” by William Atherton Du Puy, depicting the life of a forest ranger, as part of that publisher’s “ The Way of Life ” series, and that 20,000 copies of the Du Puy book were printed and distributed, and it is likely that some copies remain in depositaries and book stores.
Plaintiff’s book was copyrighted in 1955, and the defendants’ book in 1956. There is no claim of infringement of copyright in this action.
Under the nom de plume “ Harry Woodbourne ”, plaintiff authored a 310-page book of prose and poetry, with illustrations, dealing with gardening in such an erudite, inspirational and practical approach as to qualify it as a classic in the literature of gardening, and to truly make it, what the author’s brochure terms “The ‘Bo It Yourself’ Home Gardeners’ Guide The book is entitled “ The Green Kingdom ”, and published by the Bond Wheelright Company, was placed on the market in August, 1955. It appears that a total of 3,000 copies *754 were manufactured and shipped and that on June 29, 1956, upon the written authority of the plaintiff, the type for the book was destroyed.
It has been appropriately said that “ The love of a garden, like love itself, like charity, never fails ”. Grand additions have been made to horticulture, through the zeal, enterprise and skill of the cultivators — the gardeners, and great improvement has been made in garden literature. But never since the days of Hooker, Loudon, and Paxton, and the splendid works of William Robinson’s, “The Flower Garden”, Miss Amherst’s, “ The History of Gardening ”, and Miss Jekyll’s, “Wood and Garden”, has there been such an outstandingly refreshing work as Harry Woodbourne’s fascinating, sensitive and practical literary gem on horticulture, entitled “ The Green Kingdom ”. As some of the many commentators have described it, the author has given the work a true vernal touch, displayed with a poet’s eye and heart and a nurseryman’s intimate knowledge, for the benefit of garden lovers of all ages and degrees of experience. Its galaxy of garden verses will rejoice all who recite them and song, fragrance and beauty comprise their symphony of peace. The author’s love of nature overflows in this book and shows a garden, “ like the burning bush, may be aflame with the presence of God ’ ’. This book truly fills a long unoccupied place in the literature of gardening, and is a book to give, and to dip into, with all the garden tips and information, both the amateur and experienced gardener will find most helpful for specific garden problems.
The sentimental element which Mr. Woodbourne has introduced into this unique work on gardening, appeals to the intellect and imagination, without the dullness and monotony of books written to instruct, and with its occasional gleam of humor, certainly is a most welcome and definite need in the literature of horticulture.' The author, truly, converses with God through Nature, and as G. B. Cheever had so adequately expressed it: “ The man who can really, in living union of the mind and heart, converse with God through Nature, finds in the material forms around him, a source of power and happiness inexhaustible, and like the life of Angels,— the highest life and glory of man is to be alive with God; and when this grandeur of sensibility to Him, and this power of communion with Him is carried, as the habit of the soul, into the forms of Nature, then the walls of our world are as the gates of Heaven ”.
It is due to people like the author that not only has the love of gardening increased, but there is a far more refined ambition *755 as to the location and arrangement of the garden. A garden has been beautifully described as “a place of seclusion, of meditation and restful peace * * * in which you collect the most beautiful things that you can procure and in which you arrange them to be as like Nature as ever you can make them ’ ’. The plaintiff has verily been enriched with a blessing of horticulture for:
‘ ‘ lie wanders away and away
With Nature, the dear old nurse,
Who sings to him night and day The rhymes of the universe.
And whenever the way seems long,
Or his heart begins to fail,
She will sing a more wonderful song,
Or tell a more marvelous tale ”.
S. Reynolds Hole.
“ The Green Kingdom ” by defendant Rachel Maddux, is advertised as an exciting and suspense-filled novel with all the adventure of Robinson Crusoe, Gulliver’s Travels and Lost Horizon. It is the story of five bewildered people who wander one day through a Rocky Mountain pass into a strange green country. Their consternation grows as they find that there is no escape but each has a chance to start life afresh in this unexplored new land; for, says iho author, the Green Kingdom has a climate of potentiality. Geologically, it is a sort of bubble formed when the earth was cooling, a territory in which all plant and animal life are green, and in this steamy, jungle-clad land the men and women of the tale hack out a home like the Swiss Family Robinson, and in that home each of them becomes the person he was meant to be. The book was published on January 3,1957 and contains 561 pages. 11,500 copies have been printed and approximately 7,250 copies have already been sold and the sum of nearly $15,000 has been expended in printing and promotion according to the defendants.
The court has gone to considerable lengths to comment on the contents of both of these books, as well as upon the inspirational attributes of horticulture and Nature in general, from which it is clearly apparent that the only similarity between the books is their common title, “ The Green Kingdom ”, which truthfully, if allegorically, describes the subjects with which they deal. Plaintiff’s book retails for $3.75 while the defendants’ retails for $4 per copy. The dust jackets in which the books are sold are decidedly dissimilar, and although when these are removed, the covers use a combination of green and yellow colors, the *756 design and printing on said covers are sufficiently dissimilar as to readily identify the one from the other, and especially so, the defendants’ book, which is almost twice as thick as the plaintiff’s.
The court and the public in general are aware that in public libraries and in modern book stores, books are displayed and kept on shelves or other depository in various sections, according to their classification, for convenience as well as to avoid confusion. Thus, books of fiction, nonfiction, history, science, travel and adventure, poetry, biography, gardening, etc., etc., will be found in the respective section allotted according to their literary classification.
It must also be noted, that a book classified as “ The ‘ Do It Yourself ’ Home Gardeners’ Guide ”, may not be one of general appeal to nongardeners and those who are among the greater number of the reading public, for as Carlyle has observed: “ Nature is the time-vesture of God that reveals Him to the wise, and hides Him from the foolish ’ ’. Therefore, a work of fiction, such as an allegorical novel, will in all probability have a wider and more extensive reading public to appeal to.
The owner of an intellectual composition has an absolute and exclusive, incorporeal right prior to publication, which differs in no respect from, other forms of personal property in the protection which the common law throws about it, and such right continues until abandoned or lost by a general publication. (18 C. J. S., Copyright and Literary Property, § 5.)
After publication, at common law, the author no longer can have any proprietary rights in his intellectual composition, including the name or title thereof, and it is well settled that a title alone is not copyrightable and that a copyright does not carry with it the exclusive right to the use of the title of the copyrighted matter, even for the term of the copyright, and it does not prevent the use of a similar title by another in connection with a different work (2 Nims on Unfair Competition and Trade-Marks [4th ed.], § 274, p. 892; Corbett v. Purdy, 80 F. 901) and in the absence of the use of the name in such a way as to create a likelihood that people will be misled, the name is publici juris, and may be used by all (Gotham Music Service v. Denton & Haskins Music Pub. Co., 259 N. Y. 86).
Where such words or names, by long use^ have become identified in the minds of the public with the goods or business of a particular trader, it is unfair competition for a subsequent trader to use them in connection with similar goods or business in such manner as to deceive the public and pass off his goods or business for that of his rival (87 C. J. S., Trade-Marks *757 Trade Names, and Unfair Competition, § 104, p. 355 and cases cited; Nu Enamel Corp. v. Nate Enamel Co., 243 App. Div. 292, affd. 268 N. Y. 574).
Use of a descriptive word or phrase will not be enjoined, however, where it has not acquired a secondary meaning, particularly where the dress of defendants’ product is so unlike that of the complainant that the two will not be confused (Time v. Life Color Lab., 279 App. Div. 51, affd. 303 N. Y. 965; Collyrium v. John Wyeth & Bros., 167 Misc. 231; Ideal Pub. Co. v. Margood Pub. Co., 64 N. Y. S. 2d 870; Smiling Irishman v. Juliano, 45 N. Y. S. 2d 361) and where the descriptive terms are not deceptively used or imitated, there is no cause for action, as the true name and description of goods may be used (Dixi-Cola Lab. v. Coca-Cola Co., 117 F. 2d 352, cert, denied 314 U. S. 629).
Geographical and place names may be used by all persons for the purpose of truthfully stating the origin of materials used or the location of a business, subject, however, to the general rules governing unfair competition.
Generic and descriptive words will not ordinarily be protected by injunction, particularly where no fraud or deception in the use of a similar title by another was intended; but the name as far as it is a symbol descriptive of the old work is not protected unless it is identified with the source or origin of production, as where the title of a book has acquired a secondary meaning, so as to denote a particular production coming from a particular source. (Gotham Music Service case, supra; Magazine Publishers v. Ziff-Davis Pub. Co., 147 F. 2d 182.)
Thus a name which has become descriptive and is closely identified in the public mind with the work of a particular author may not be used even after expiration of the copyright unless adequate explanation is given to guard against mistakes. (Patten v. Superior Talking Pictures, 8 F. Supp. 196; Hemingway v. Film Alliance of United States, 174 Misc. 725.)
Neither plaintiff nor defendants can claim that they were the first to use the title, “ The Green Kingdom ” in any published work. Defendant Maddux contends that she conceived her manuscript with that title in 1942 and submitted the same to Harper & Bros., for publication in 1942, 1946 and in 1951; also that but 3,000 copies of plaintiff’s book were printed and that on June 29, 1956 the type for his book was destroyed and that his book is out of print.
Plaintiff in his reply affidavit denies his book is out of print, and alleges that once a book has been published, it is no longer necessary to retain the type, since under the present practice *758 a book may be reproduced at will by the process of photostating or photo-offset. However, the court is advised that to reproduce the book by photo-offset necessitates photographing and from the negatives of such photographs metal plates are produced which replace the original type, and from which metal plates, as in the case of the original type, printed pages are made. This process, the court is constrained to note would entail considerably more expense than the cost of printing from the original type, and to reproduce the book by the process of photostating would be commercially prohibitive. Furthermore, it is significant, that plaintiff has failed to allege or contend that plaintiff is reproducing his book by either of said processes or that he intends to do so, and the court may not infer that he is doing so or intends so doing because he avers that the book can be reproduced by photostating or photo-offset. Plaintiff also has failed to allege or contend that he has any books to sell or that he intends to sell any of his books in the future, whereas it appears from the opposing affidavits that all his books have been sold.
Allegorically, “ The Green Kingdom ”, as that phrase may be generally understood, is not the creation of any mortal,- it is Nature’s endowment to this Barth. The fact that “ The Green Kingdom ” has been a part of any individual for all his life cannot create for that individual any exclusive proprietary right to “ The Green Kingdom ”, which in reality is but Nature’s gift to Mankind, nor any exclusive right to the use of the phrase ‘‘The Green Kingdom” because thereof or because he has been referring to the scenes of his activity as “ The Green Kingdom ”. Plaintiff admittedly does not claim priority of use of the name because of his activity for 40 years in the realm of horticulture described as “ The Green Kingdom ”.
The ascertainment of probability of confusion because of similarity of names presents a problem not solvable by a precise rule or measure, but rather it is a matter of varying human reactions to situations incapable of exact appraisement (Colburn v. Puritan Mills, 108 F. 2d 377, 378).
When the precedents are examined carefully, they disclose that a plaintiff in order to prevail in an action for injunctive relief, must prove (1) that defendant has acted unfairly in some manner, or (2) that defendant’s activities have caused confusion or mistake, or are likely to cause confusion or mistake, in the minds of the public, with plaintiff’s activities.
*759 In Pollock v. Paul H. Pollock, Inc. (282 App. Div. 930 [1st Dept.]) the court said, a plaintiff cannot succeed where “ evidence fails to disclose any fraud, misrepresentation, deceit, unfairness, or palming off by defendants, and * * * there was no proof of confusion or likelihood of confusion on the part of the public, or other proof of unfair trade on the part of defendants
In the case at bar there is no allegation of fraud, misrepresentation, deceit or any statement of fact from which the court may determine that the defendants deliberately selected the title “ The Green Kingdom ” in order to create confusion and mistake in the minds of the public, and to capitalize and trade on plaintiff’s reputation, and to deceive the public into believing that they or their book are in any way connected with the plaintiff. In the absence of such showing and proof plaintiff cannot prevail (Long’s Hat Stores Corp. v. Long’s Clothes, 224 App. Div. 497; Tiffany & Co. v. Tiffany Productions, 147 Misc. 679, affd. 237 App. Div. 801, affd. 262 N. Y. 482; Dunhill of London v. Dunhill Shirt Shop, 3 F. Supp. 487).
The use of a similar name by another to rightly and truthfully describe his own product does not constitute a legal or moral wrong, even if its effect is to cause the public to mistake the origin or ownership of the product (Warner & Co. v. Lilly & Co., 265 U. S. 526) and any, necessarily caused thereby to a prior trader who has previously used such terms or names' is damnum absque injuria. Nevertheless, even descriptive and generic names may not be used in such a manner as to pass off the goods of one man as and for that of another. But the case at bar is not such a case and the court can find no evidence of unfair competition on the part of the defendants.
Preliminary injunction is a very drastic remedy and is ordinarily not granted, except to maintain the status quo, and even then, only upon a very substantial and convincing showing that there has been unfair competition, and in order to establish a cause of action on' that ground, plaintiff' must necessarily allege and prove that the title has attained such a secondary meaning' that the title is identified in the public mind with the plaintiff, to such an extent that the title has become well known and the work bearing that title at once recognized as the plaintiff’s work. Plaintiff must also establish that the defendants are trading upon the plaintiff’s name and good will, and are palming off their book upon plaintiff’s reputation (Munro v. Tousey, 129 N. Y. 38; Brondfield v. Paramount Pictures Corp., 200 Misc. 883; Sherwood v. Twentieth Century-Fox Film Corp., 173 Misc. 871; Whitman v. Metro-Goldwyn-Mayer Corp., *760 159 Misc. 850; Manners v. Triangle Film Corp., 247 F. 301; Crescent Tool Co. v. Kilborn & Bishop Co., 247 F. 299; Collins v. Metro-Goldwyn-Mayer Pictures Corp., 25 F. Supp. 781).
Plaintiff did not invent the name, “ The Green Kingdom ”, and has failed to show or allege that the acts of the defendants amount to an unlawful abuse of competition by creating a reasonable likelihood of deception. Both books are comparatively recent publications, and from the moving papers this court cannot say that plaintiff was so identified in the minds of the general public as the creator of the horticultural book entitled “ The Green Kingdom ”, that it would be unfair to him to permit the defendants to use that name for their book. The title is descriptive and it truthfully describes the contents of both books. Plaintiff’s book had an original issue of 3,000 copies perhaps because it was intended to reach that limited portion of the reading public which is interested in gardening. Defendants’ book has had a printing of 11,500 copies and 7,250 copies have already been sold, which is some indication that the book was intended to reach a much larger portion of readers than plaintiff’s.
Plaintiff, as well as the defendants, had to advertise in order to make their books known to the public. Books are largely sold through the medium of advertising which conveys a general idea of what the book deals with. In such advertising it must be assumed that there could be no confusion about the subject matter or authors of either book. Furthermore to avoid confusion the books had entirely dissimilar dust jackets and were readily distinguishable in appearance. As one does not judge a book by its cover, so one does not buy a book by its title, without some knowledge or idea of what the book is about or who the author is. Under all the circumstances, the court cannot find that there has been any simulation or unfair competition in the publication, sale or distribution of defendants’ book, or that it could possibly be palmed off as plaintiff’s (Gotham Music Service v. Denton & Haskins Music Pub. Co., 259 N. Y. 86; Fisher v. Star Co., 231 N. Y. 414; Underhill v. Schenck, 238 N. Y. 7).
It makes no difference what effort or money the plaintiff expended in order to persuade the public that “ The Green Kingdom ” means a composition of prose and poetry written by the plaintiff which every lover of horticulture should read as the product of plaintiff’s pen. So far as such effort and expense did not succeed in actually converting the public to his gospel, plaintiff can have no relief. A secondary meaning comes gradually and the court does not think that it can be *761 acquired overnight by intensive advertising, and mere advertising over a period of time is insufficient to show that a secondary meaning has been acquired, since the criterion is the achievement of a result rather than the effort expended to achieve the result (Du Pont Cellophane Co. v. Waxed Products Co., 85 F. 2d 75, cert, denied 299 U. S. 601).
It has been repeatedly held that priority in time is not controlling in determining whether the title of a book or play has achieved the right to protection (Frohman v. Morris, Inc., 68 Misc. 461; Underhill v. Schenck, 114 Misc. 520, mod. 201 App. Div. 46).
Plaintiff’s exhibits show that his major promotional efforts were undertaken in the fall of 1955 and early in 1956, and that thereafter he abandoned attempts to advertise and promote his book. If he abandoned publication, he cannot prevail against the defendants who have used the title successfully at a later time (Golenpaul v. Rosett, 174 Misc. 114).
Whether or not the title “The Green Kingdom,”, under the circumstances disclosed in the case at bar, was so publicized and known to be associated in the public mind with plaintiff’s book is, at best, rather doubtful; and in the absence of such a clear and convincing association in the public mind, and where the ultimate success of the moving party is in doubt such drastic and extraordinary relief as a temporary injunction, will be denied (Brondfield v. Paramount Pictures Corp., supra).
Plaintiff has failed to show any damage by the continued sale and distribution of the defendants’ book, or as already noted, that he has any books to sell, and it is not disputed that he has destroyed the type for his book, after the first and only edition of 3,000 copies, nor does he claim that a second edition is in process or even contemplated. The law is clear that a mere statement of intention or claim of prospective harm is not sufficient to support an action for relief. (Manners v. Triangle Film Corp., 247 F. 301, 303, supra; Golenpaul v. Rosett, supra. See, also, Munroe v. Tousey, supra; McGraw-Hill Pub. Co. v. American Aviation Associates, 117 F. 2d 293.) “ Probable confusion cannot be shown by pointing out that at some place, at some time, someone made a false identification ” (McGraw-Hill case, supra, p. 295) and the Reiss and Shannon instances to which plaintiff lays stress to show confusion seem so transparent and questionable as to be of any probative force on a motion for a preliminary injunction.
Defendants’ book was announced in trade papers as early as June, 1956 and again in the fall list of Simon & Schuster Inc., well-known publishers, in 1956 and review copies and press *762 releases were sent out six weeks prior to publication. Defendants contend that plaintiff knew or should have known that this Maddux novel was about to be released, but he waited until just prior to publication to complain and then waited two months before commencing his present action, and during the pendency of this instant motion for a temporary injunction asked for and obtained three successive adjournments and delayed another six weeks. On such facts cases like Brown v. Williams (4 Misc 2d 312) lead to the conclusion that plaintiff has waived whatever right he may have to the relief he now seeks. Forstmann v. Joray Holding Co. (244 N. Y. 22) is authority for the rule that where injunctive relief is sought, the one seeking it must invoke the process of the court with reasonable diligence in order to preserve the status quo.
Although, neither in his moving papers nor in his complaint, did plaintiff specifically predicate the grounds for the relief he seeks pursuant to the provisions of section 964 of the Penal Law, in his reply affidavit and brief on this motion, he urges the alleged violation by defendants of that statute as ground for relief.
Section 964 of the Penal Law is contained in article 86 under the classification.“ Frauds and Cheats”. The statute, in part, reads as follows: “ No person, firm or corporation shall, with intent to deceive or mislead the public, assume, adopt or use as, or as part of, a corporate, assumed or trade name, for advertising purposes, or for the purposes of trade, or for any other purpose, any name, designation or style, or any symbol or simulation thereof, or a part of any name, designation or style, or any symbol or simulation thereof, which may deceive or mislead the public as to the identity of such person, firm or corporation or as to the connection of such person, firm or corporation with any other person, firm or corporation; nor shall any person, firm or corporation, with like intent, adopt or use as, or as part of, a corporate, assumed or trade name, for advertising purposes, or for the purposes of trade, or for any other purpose, any address or designation of location in the community which may deceive or mislead the public as to the true address or location of such person, firm or corporation.” (Emphasis supplied.)
The statute, by its terms, is directed to the assumption, adoption or use by a person of a name- which may deceive or mislead the public as to the identity of such person or as to the connection of such person with any other person. A title of a book does .not seem to fit the prohibition of the use of a name as contemplated by the Legislature. Furthermore, plaintiff has not *763 alleged nor even contended that defendants used the title “ The Green Kingdom ” with any intention of deceiving or misleading the public. And as already stated, his failure to allege or prove an intent to deceive the public or to establish that the title has acquired a secondary meaning, precludes granting the temporary injunction he seeks (Association of Contr. Plumbers v. Contracting Plumbers Assn., 302 N. Y. 495).
Furthermore, a temporary injunction would be of little value to the plaintiff as compared to the incalculable harm to the defendants who have an investment in their book of nearly $15,000, should plaintiff’s motion be granted.
After a careful consideration of the pleadings and the affidavits and exhibits submitted on this motion, the court is constrained to hold that there has been no deception on the part of the defendants or attempt to mislead the public, nor sufficient proof that the public is likely to be or has been misled or deceived by reason of the publication, sale and distribution of defendants’ book; nor is there any proof from which the court may properly determine that the title “ The Green Kingdom ” has acquired a secondary meaning so as to associate plaintiff and identify him with his composition of that name; nor is there sufficient proof to show that defendants are trading upon plaintiff’s name and good will, and that they are palming off their book upon his reputation.
While the plaintiff has failed to establish the proof required to entitle him to the relief sought on this motion, the court nevertheless believes that this case should be tried early and that the plaintiff should move for an early trial, if so advised.
Motion denied. Submit order.